COURT OF APPEALS OF VIRGINIA

Present:   Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


TY CHANDLER GUDA

                                                            OPINION BY
v.       Record No. 2184-02-4                    JUDGE WALTER S. FELTON, JR.
                                                            FEBRUARY 17, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael P. McWeeny, Judge

George J. Wooditch, Jr., Senior Assistant Public Defender
(Office of the Public Defender, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


A jury convicted Ty Chandler Guda of taking indecent liberties with a child by a person in a

custodial or supervisory relationship, in violation of Code § 18.2-370.1.  On appeal, he contends that

the evidence was insufficient to find that he maintained a "custodial or supervisory relationship"

over the child within the meaning of the statute.  We affirm the conviction.

BACKGROUND

On appeal, we examine the evidence in the light most favorable to the Commonwealth,

Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  That principle

requires us to discard the evidence of the accused in conflict with that of the Commonwealth and to

regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that

may be drawn therefrom.  Dugger v. Commonwealth, 40 Va. App. 586, 589, 580 S.E.2d 477, 479

(2003).  So viewed the evidence established that at the time of the offense the victim was a

fifteen-year-old female.  The victim attended the tenth grade at a Fairfax County public high school,

the same school that employed Guda as a school security officer and as an assistant football coach. Guda was thirty-nine years old at the time of the incident.

On November 9, 2001, the victim was feeling ill and wanted to leave school and to go home. Her efforts to contact her mother about whether she should leave school led to the victim being late for class. Lacking a hall pass, she made a false pass. As the victim walked to her class, she met Guda, whom she knew, in the hall. She requested a hall pass from him knowing that he had the authority to issue passes to students.

Following the victim's request for a hall pass, Guda asked the victim to show him her breasts. The victim testified that she thought Guda was joking when he made this comment. Because she needed a hall pass, she followed him at his direction into the boys' locker room where his office was located. Guda signed a hall pass for the victim, but did not immediately hand it to her. Instead, he backed the victim against the wall and again asked to see her breasts. When she put her arms across her chest, Guda pulled her hands away and pulled her shirt and bra down, exposing her breast. When she immediately pulled her shirt back up, Guda again pulled it down, exposing her other breast. Guda then put his mouth on her exposed breast. With his hand, Guda groped the victim's vaginal area through her clothing. After Guda stopped touching her, he grabbed his crotch through his pants.

When the victim ran from the boys' locker room, Guda followed her into the hall and placed his arm around her. She told him that she would not tell anyone about the incident, and he responded, "I know; that's why I did it to you." He asked if she had ever thought about having sex with him, and if she was scared. She admitted to him that she was scared. The victim then took the hall pass and went to class crying. When asked about why she was crying, she explained that she wasn't feeling well. Shortly thereafter, she told a friend about the incident. She then told another friend about the incident, and the two then left the school for a short period. At the urging of the

friend, the victim returned to school and reported the incident to the school principal. The school principal confronted Guda about the allegations that afternoon and immediately placed him on administrative leave. After she reported Guda's conduct to the school principal, the victim was taken to the hospital where a nurse swabbed her right breast. DNA testing done of the body fluid from the swab revealed the presence of Guda's DNA.

Elton C. Howerton, head of security for the school, testified that Guda had been a "Security Specialist" at the school for over two years. He testified that Guda was responsible for the safety and security of the students, staff, and school facilities. His duties included monitoring student behavior in the hallways, identifying people coming into the building and directing bus traffic. He also had authority to issue hall passes. Howerton further testified that Guda was responsible for the evacuation of the buildings in the event of a fire, confronting students in the halls who might be tardy for class, and taking appropriate action when students were disorderly.

Based on the above evidence, the jury found Guda guilty of taking indecent liberties with a child while in a custodial or supervisory relationship. It fixed Guda's sentence at three months' incarceration. The trial court sentenced Guda to the term fixed by the jury and imposed an additional six months of post-release supervision.

ANALYSIS

Our standard of review is well settled. When considering the sufficiency of the evidence on appeal, "the jury's verdict will not be disturbed unless it is plainly wrong or without evidence to support it." Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999) (quoting Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988)). The credibility of the witnesses, the weight accorded their testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). "In its role of judging witness credibility, the

fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citations omitted).

The sole question on appeal is whether the evidence was sufficient to prove that the requisite custodial or supervisory relationship existed between Guda and the victim. Guda contends that the custodial relationship necessary under Code § 18.2-370.1 requires the specific entrustment of the victim by her parents into his care. We disagree. The record reflects sufficient evidence from which the jury could reasonably conclude that, as a school security officer,[1] Guda exercised sufficient control and care over the students, including the victim, to create the custodial or supervisory relationship necessary under Code § 18.2-370.1.

Code § 18.2-370.1 provides, in pertinent part, that:

> Any person eighteen years of age or older *who maintains a custodial or supervisory relationship over a child* under the age of eighteen, *including but not limited to the parent, step-parent, grandparent, step-grandparent, or who stands in loco parentis with respect to such child* and is not legally married to such child, and who, with lascivious intent, knowingly and intentionally . . . (ii) proposes to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361, . . . or (iv) proposes that any such child expose his or her sexual or genital parts to such person, or (v) proposes to the child that the child engage in sexual intercourse, sodomy or fondling of sexual or genital parts with another person, or (vi)

---

[1] See Code § 22.1-280.2:1 (granting authority to local school boards to employ security officers). Code § 9.1-101 defines "school security officer" as:

> [A]n individual who is employed by the local school board for the singular purpose of maintaining order and discipline, preventing crime, investigating violations of school board policies, and detaining students violating the law or school board policies on school property or at school-sponsored events and who is responsible solely for ensuring the safety, security, and welfare of all students, faculty, staff, and visitors in the assigned school.

- 4 -

> sexually abuses the child as defined in § 18.2-67.10(6), shall be
> guilty of a Class 6 felony.

(Emphasis added).

Generally, the word "custody" has been defined as "the care and control of a thing or person." Black's Law Dictionary 384 (6th ed. 1990). In interpreting Code § 18.2-370.1, the Virginia Courts have broadly construed the meaning of custody, going beyond legal custody, to include those with informal, temporary custody. See Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972), cert. denied, 407 U.S. 922 (1972); Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999). An overly restrictive definition of custody "'would eliminate, among others, *teachers, athletic instructors and baby-sitters, all of whom might have temporary custody of children*, from the purview of the statute.'" Krampen, 29 Va. App. at 168, 510 S.E.2d at 278 (1999) (emphasis in original) (quoting Lovisi, 212 Va. at 850, 188 S.E.2d at 208); see Moyer v. Commonwealth, 33 Va. App. 8, 531 S.E.2d 580 (2000) (affirming the conviction of a teacher under Code § 18.2-370.1 for unlawful conduct with a student outside of the school environment).

In Krampen, we addressed the issue of a custodial relationship and held that "[t]he term also includes those individuals eighteen years or older who have a temporary, custodial relationship with a child, such as, 'teachers, athletic instructors and babysitters.' The child in each instance has been entrusted to the care and control of the supervising adult." Krampen, 29 Va. App. at 168, 510 S.E.2d at 278 (quoting Lovisi, 212 Va. at 850, 188 S.E.2d at 208); see DeAmicis v. Commonwealth, 31 Va. App. 437, 443, 524 S.E.2d 151, 154 (2000) (finding the requisite custodial relationship, where a mother entrusted her daughter to the care, custody, and control of the defendant for purposes of professional counseling regarding the daughter's modeling career).

Guda contends that his case differs from Krampen, because the victim was not specifically entrusted into his care and custody. In Krampen, the mother gave permission for Krampen to drive the victim home from church. We found Krampen's relationship with the victim was similar to that of "a baby-sitter, *i.e.* one entrusted with the care of the child for a limited period." Krampen, 29 Va. App. at 168, 510 S.E.2d at 278-79.

Despite Guda's argument to the contrary, Code § 18.2-370.1 does not require the specific entrustment of the child to the care of the adult to create a custodial or supervisory relationship. In Krampen, we also found that a custodial relationship arises when the supervising adult exercises care and control over the child, with the care including the "responsibility for and the control of the child's safety and well being." Krampen, 29 Va. App. at 168, 510 S.E.2d at 279.

Similarly, we held in Snow v. Commonwealth, 33 Va. App. 766, 537 S.E.2d 6 (2000), that "one may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility." Id. at 773, 537 S.E.2d at 10 (addressing the question of custodial relationships under Code § 18.2-371, a similar statute that concerns cruelty to a child by a person responsible for the child's care).[2] In Snow, the appellant was traveling with his two nephews and their father, his brother. Police stopped the vehicle and detained the appellant's brother. Snow took control of the vehicle and drove away at high speeds with the two children still in the car. Because he took control of the car knowing

---

[2] Code § 18.2-371.1(B) provides, in pertinent part, that

> [a]ny parent, guardian, or other person *responsible for the care of a child under the age of eighteen* whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

(Emphasis added).

that the two children were in the vehicle, Snow was found to be "a person responsible for the care" of the children in the car without explicit parental delegation of supervisory responsibility. Id.

As a school security officer, Guda exercised care and control over students during school hours. The record reflects that Guda was responsible for monitoring student conduct in the school's hallways. That responsibility included care and control over students, such as the victim here, found in the school's hallways during class time. He also directed students during the loading and unloading of the school buses before and after school. He was issued a two-way radio and could remove students from class at the request of his supervisors. He was also responsible for confronting students who were in the halls without hall passes. Guda himself testified that, as a school security officer, he prevented students from running in the halls, broke up fights, and had the authority to issue hall passes.

The record clearly establishes that Guda was responsible for the safety and security of the students, including the victim. The record also reflects that Guda specifically exercised care and control over the victim when she approached him for a hall pass, an item she needed to return to her classroom. At his direction, the victim followed Guda into the boys' locker room for the purpose of obtaining a hall pass, which he, in his supervisory capacity over students, had the authority to issue. While the victim was in Guda's custodial care and control, he sexually assaulted her in violation of Code § 18.2-370.1.

The Commonwealth's evidence was sufficient for the jury to reasonably conclude beyond a reasonable doubt that Guda maintained the requisite custodial or supervisory relationship over the victim when he sexually abused her. Accordingly we affirm his conviction.

Affirmed.