COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


THOMAS LEE BEAZLEY

                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 2505-03-2                            JUDGE JAMES W. BENTON, JR.
                                                               FEBRUARY 22, 2005
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                            Paul M. Peatross, Jr., Judge

        Matthew P. Geary for appellant.

        Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on brief), for appellee.


        The trial judge convicted Thomas Lee Beazley of four counts of taking indecent liberties

with a child, three in violation of Code § 18.2-370.1 and one in violation of Code § 18.2-370.

Beazley contends that the evidence was insufficient to prove that he exercised a custodial or

supervisory relationship, a necessary element of the three charges under Code § 18.2-370.1. We

disagree, and affirm his convictions.

                                                I.

        "Where the sufficiency of the evidence is challenged after conviction, it is our duty to

consider [the evidence] in a light most favorable to the Commonwealth and give it all reasonable

inferences fairly deducible therefrom." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218

S.E.2d 534, 537 (1975). So viewed, the evidence proved Beazley, who was forty-five years old,

lived on a farm in Albemarle County. Two sisters, age 13 and age 10, lived with their family on the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

same farm in a residence next to Beazley's and within walking distance. The older girl occasionally cut Beazley's grass.

On July 30, Beazley asked the girls if they wanted to help him wash his horse. While they were washing the horse with Beazley, he said, "don't forget to wash his dulocks," referring to the horse's genitals. The older girl testified they were using sponges and did not follow his instruction. After washing the horse, the girls and Beazley playfully sprinkled each other with a water hose in front of Beazley's house. The girls then went home to change their wet clothes and later joined Beazley to ride bicycles in the field near his residence. The older girl testified that Beazley was wearing exceptionally short pants and that she saw "his penis hanging out." When she told him, Beazley responded that his penis "was bigger than any other guys."

After riding bicycles, Beazley invited the girls to his residence to watch movies later that evening. The girls went home and asked for their mother's permission to do so. She agreed they could go to Beazley's residence that evening after dinner. When the girls arrived at Beazley's residence, he was in the bathroom. Beazley told them he was brushing his teeth and said "[i]t's okay to come in the bathroom." When the girls entered the bathroom, Beazley was standing in the shower. They saw him naked in the shower, left the bathroom, and waited on the couch. Beazley later entered wearing boxer shorts.

Later, while Beazley was in the kitchen making popcorn, the older girl passed by him. She testified that Beazley grabbed her hand, "made [her] touch his penis," and asked if she had any pubic hair. Then they began to watch a series of movies in Beazley's bedroom while sitting on top of Beazley's bed. As they were watching the movies, they were "playing house." Beazley "was the dad, [the older girl] was the mom, and [the younger girl] was the baby." Playing games, Beazley used a long feather to tickle the older girl between her legs. The three of them then sat in a row, one in front of the other, changing positions and scratching each other's backs. While Beazley was

- 2 -

scratching the older girl's back, he "reached up and touched her breast." Beazley also kissed her on the cheek. On another occasion, Beazley called the girls into the bathroom, where he was sitting naked on the toilet, and he asked them "where he should get a tattoo."

At some point in the evening, the girls called home to determine the time they were to return home. The girls' mother testified that "[Beazley] got on the phone, too, and said the movie went over, if they could stay a little bit longer, and [she] said, yes." She asked Beazley whether the girls were behaving. He responded they were "fine." After the telephone call, Beazley and the girls watched television for a short time. Ultimately, the girls left the residence earlier than their mother had asked, because of "[a]ll the stuff happening at his house." As the girls were collecting their bicycles, they looked through a window and saw Beazley on his bed masturbating while watching a pornographic movie. Shortly after the girls arrived home, they told their mother what had occurred.

A detective testified that Beazley admitted he and the girls had washed the horse, rode bicycles, watched movies, and scratched each other's backs. Beazley denied, however, any wrong doing, and he told the detective the older girl acted inappropriately, raising her shorts, putting his hand on her breast, and trying to grab his penis.

Beazley testified and denied exposing himself to the girls or touching them sexually. He also testified that when the girls spoke to their mother on the telephone, she spoke to him and asked if the girls were pestering him. He responded "no, they're fine." He testified that the girls, not he, asked their mother about staying late.

At the conclusion of the evidence, the trial judge convicted Beazley on four of the six counts of taking indecent liberties with the children.

## II.

Beazley contends that because he and the girls' mother did not expressly agree that he would take responsibility for the girls, he did not assume custody for the girls and did not agree to

be responsible to supervise the girls that evening. He argues, therefore, that no evidence proved that a "custodial or supervisory" relationship formed and that the judge erred in convicting him for violations of Code § 18.2-370.1.

In pertinent part, Code § 18.2-370.1(A) provides as follows:

> Any person eighteen years of age or older who maintains a custodial or supervisory relationship over a child under the age of eighteen, including but not limited to the parent, step-parent, grandparent, step-grandparent, or who stands in loco parentis with respect to such child and is not legally married to such child, and who, with lascivious intent, knowingly and intentionally . . . (iii) exposes his or her sexual or genital parts to such child, . . . or (vi) sexually abuses the child as defined in § 18.2-67.10(6), shall be guilty of a Class 6 felony.

Code § 18.2-67.10(6) defines "sexual abuse" to include:

> [A]n act committed with the intent to sexually molest, arouse, or gratify any person, where:
>
> a. The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts;
>
> b. The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts . . . .

The trial judge convicted Beazley for three acts in violation of Code § 18.2-370.1: touching the older girl's breast, forcing the older girl to touch his penis with her hand, and exposing his genitals while on the toilet. The judge also convicted Beazley under Code § 18.2-370(A) for exposing his genitals while riding his bicycle; however, this conviction is not at issue here because it did not require proof of a custodial or supervisory relationship.

Code § 18.2-370.1 requires proof of a "custodial or supervisory relationship" as a "predicate to finding guilt." Seibert v. Commonwealth, 22 Va. App. 40, 46, 467 S.E.2d 838, 841 (1996). The statute lists categories of those who maintain a custodial or supervisory relationship over children and expressly "includ[es] but [is] not limited to the parent, step-parent, grandparent, [and] step-grandparent." Code § 18.2-370.1. Because the statute also includes a

- 4 -

person "who stands in loco parentis with respect to such child," id., decisions of the Supreme Court and our Court "interpreting Code § 18.2-370.1 . . . have broadly construed the meaning of custody, going beyond legal custody, to include those with informal, temporary custody." Guda v. Commonwealth, 42 Va. App. 453, 458, 592 S.E.2d 748, 750 (2004) (citing Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208, cert. denied, 407 U.S. 922 (1972); Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999)). These decisions have consistently held that "teachers, athletic instructors and baby-sitters, all of whom might have temporary custody of children," are included within the purview of the statute. Lovisi, 212 Va. at 850, 188 S.E.2d at 208; Guda, 42 Va. App. at 458-59, 592 S.E.2d at 750; Krampen, 29 Va. App. at 167, 510 S.E.2d at 278. See also Moyer v. Commonwealth, 33 Va. App. 8, 531 S.E.2d 580 (2000) (involving a teacher). Thus, we have held that "in each instance [where a child] has been entrusted to the care and control of the supervising adult," a custodial or supervisory relationship exists under the meaning of the statute. Krampen, 29 Va. App. at 168, 510 S.E.2d at 278.

Beazley's primary argument is that because he and the girls' mother did not agree he would supervise the children, no custodial or supervisory relationship existed. We disagree. As we held in Snow v. Commonwealth, 33 Va. App. 766, 773, 537 S.E.2d 6, 10 (2000), "a logical extension of Krampen, . . . [is] that one may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility." Indeed, the evidence in this case proved more than Beazley's unilateral act of inviting the girls. Although Beazley did not communicate directly with the girls' mother before the girls came to his residence that night, the girls relayed Beazley's invitation to their mother. She entrusted Beazley with the girls by giving them permission to accept his invitation and to be at his home for the evening. Beazley affirmed his supervisory role when he spoke with the girls'

- 5 -

mother on the phone later that evening. He specifically asked if the girls could stay longer and informed her that the girls were behaving "fine."

Beazley argues that he was not a "babysitter" and was not paid for his services. In Krampen, no evidence proved the accused was paid. Indeed, it was unlikely that payment was involved. There, we noted an informal arrangement and held as follows:

> The evidence established that, with the permission of the victim's mother, appellant willingly drove the victim home from church. As the only adult present during these trips, appellant had the responsibility for and control of the victim's safety and well-being while she was in his care. His contact with the victim was in the nature of a baby-sitter, i.e., one entrusted with the care of the child for a limited period of time.

29 Va. App. at 168, 510 S.E.2d at 278-79. We held this evidence was sufficient to prove beyond a reasonable doubt that the accused maintained the requisite custodial or supervisory relationship over the child. Likewise, we hold the evidence was sufficient to prove Beazley assumed the role of supervising the girls inside his house and, thus, a supervisory or custodial relationship existed. By inviting minor children to his home to watch movies with their mother's permission, Beazley assumed responsibility to supervise the girls inside his home. The evidence proves a very common occurrence between neighbors: an invitation, on the one hand, and a grant of permission by the parent, on the other, without a formal agreement. Inside his house, Beazley had the authority to determine limitations on the girls' activities, to monitor their behavior, and to require them to leave if they behaved inappropriately. This authority is within the statute's meaning of a supervisory relationship over the children. As the sole adult alone in his home with the girls, Beazley tacitly agreed he would oversee their safety and well-being while they were in his presence. This kind of custody or supervision is the type of temporary relationship Krampen contemplates as falling within the purview of the statute.

For these reasons, we affirm Beazley's convictions.

Affirmed.