Tuesday                3rd

April, 2007.


Jayson Franklin Maxwell,                                                                              Appellant,

 against                    Record No. 2648-05-2
                           Circuit Court Nos. CR03000237-00 and CR03000242-00

Commonwealth of Virginia,                                                                      Appellee.


Upon Rehearing En Banc

Before Chief Judge Felton, Judges Benton, Elder, Frank, Humphreys, Clements,
Kelsey, McClanahan, Haley, Petty and Beales

A. Pierre Jackson for appellant.

Benjamin H. Katz, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


By memorandum opinion dated November 21, 2006, a panel of this Court reversed the judgment

of the trial court. We stayed the mandate of that decision and granted rehearing *en banc*. Upon

reconsideration, the November 21, 2006 mandate of this Court is vacated, and we affirm the trial court

for the reasons stated by the dissent in Maxwell v. Commonwealth, No. 2648-05-2, slip op. 12-15,

(Va. Ct. App. Nov. 21, 2006), adopting the dissenting opinion as our own. The appellant shall pay to the

Commonwealth of Virginia thirty dollars damages.

Judges Benton, Elder, and Clements would reverse the trial court for the reasons stated in the

panel majority opinion.

It is ordered that the trial court allow counsel for the appellant a total fee of $925 for services

rendered the appellant on this appeal, in addition to counsel's costs and necessary direct out-of-pocket

expenses.

The Commonwealth shall recover of the appellant the amount paid court-appointed counsel to represent him in this proceeding, counsel's costs and necessary direct out-of-pocket expenses, and the fees and costs to be assessed by the clerk of this Court and the clerk of the trial court.

This order shall be certified to the trial court.

Costs due the Commonwealth by
appellant in Court of Appeals of Virginia:

Attorney's fee        $925.00  plus costs and expenses

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-2-

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **9th** *day of* **January, 2007**.

Jayson Franklin Maxwell,                                                                          Appellant,

 against              Record No. 2648-05-2
                     Circuit Court Nos. CR03000237-00 and CR03000242-00

Commonwealth of Virginia,                                                                          Appellee.


Upon a Petition for Rehearing En Banc

Before the Full Court

On December 4, 2006 came the appellee, by the Attorney General of Virginia, and filed a

petition praying that the Court set aside the judgment rendered herein on November 21, 2006, and grant

a rehearing thereof.

On consideration whereof, the petition for rehearing is granted, the mandate entered herein on  is

stayed pending the decision of the Court, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35.


A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Clements and Beales
Argued at Richmond, Virginia


JAYSON FRANKLIN MAXWELL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2648-05-2           JUDGE JEAN HARRISON CLEMENTS
                                                    NOVEMBER 21, 2006

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
                              Richard S. Blanton, Judge

              A. Pierre Jackson for appellant.

              Benjamin H. Katz, Assistant Attorney General (Robert F.
              McDonnell, Attorney General; Deana A. Malek, Assistant Attorney
              General, on brief), for appellee.


        Jayson Franklin Maxwell (appellant) was convicted in a jury trial of possession of cocaine

with the intent to distribute, third or subsequent offense, in violation of Code § 18.2-248, and

possession of marijuana, in violation of Code § 18.2-250.1.  On appeal, he contends the evidence

was insufficient to support his convictions.  We agree and reverse his convictions.

        As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

                                    I.  BACKGROUND

        The evidence relevant to this appeal is not in dispute.  On March 25, 2003, Farmville Police

Officer Bill Hogan drove his unmarked police vehicle to the Farmville Shopping Center, seeking to

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

speak with appellant about an unrelated matter involving a check. Arriving at the shopping center shortly after 11:00 a.m., Officer Hogan saw appellant standing outside with another person. Displaying his badge of authority and sidearm, Officer Hogan approached appellant and said he needed to talk to him about the check. Appellant agreed to speak with the officer. As they spoke, Officer Hogan observed that appellant kept both of his hands "not in his pockets, but . . . down the front of his pants." Concerned for "officer safety" because he "couldn't see [appellant's] hands" and "it was a place for something to be hidden," Officer Hogan asked appellant to remove his hands and told him they "needed to go to the police department" to resolve the check matter. The officer explained he needed to pat appellant down "to see if he had anything on him" before putting him in the police car. Keeping his hands down his pants, appellant stepped back and told Officer Hogan several times he had nothing on him. When the officer reiterated his need to pat appellant down before transporting him to the police station, appellant fled.

After pursuing appellant on foot for a short distance, Officer Hogan returned to his vehicle to continue the pursuit. Officer Hogan proceeded down the large alley behind the shopping center in the direction he had seen appellant run. As he drove past a lumberyard behind the shopping center, Officer Hogan observed appellant "walk[ing] out from behind" several stacks of plywood located between the alley and a chain-link fence that enclosed the lumberyard. Officer Hogan took appellant, who was not wearing gloves, into custody and placed him in the vehicle of Virginia State Trooper Sean Givens, who had responded to the scene. The officers found $460 in cash on appellant's person. Officer Hogan then checked the area for contraband that appellant might have hidden or thrown. Finding nothing, he called for a drug-sniffing dog based at the local jail.

At approximately 11:15 a.m., K-9 Officer Robert Goldman responded to the scene with a drug-sniffing dog. The dog "alerted on" one of the stacks of plywood. Officer Goldman reached into the stack of plywood and retrieved a clear plastic bag that subsequent laboratory analysis

- 2 -

revealed contained eight individually wrapped rocks of crack cocaine. The bag was located on the side of the stack next to the fence. After finding the bag, Officer Goldman rewarded the dog and ceased the search.

Trooper Givens engaged appellant in conversation during the search. He observed appellant's demeanor change from "talkative and cooperative" to "less talkative and distant" once the cocaine was discovered. Trooper Givens then transported appellant "to the police department for processing."

Coy Sams testified he was working at the lumberyard on the morning of March 25, 2003. He explained that he unloaded the fourteen units of plywood from a tractor-trailer truck around 8:30 that morning and stacked them outside the lumberyard fence in the location they were in when the police found the cocaine. He also testified that, after unloading the plywood, he spent the remainder of the morning working at the lumberyard, "going in and out of the warehouse and back and forth to the yard to retrieve products and materials for customers." He stated he saw no one near the stacks of plywood that morning until he saw the police in the area, but admitted he had not been "outside guarding the plywood the entire morning." Sams further testified he did not place the cocaine in the plywood.

Mac Robinson, Jr., testified he was employed by the lumberyard on March 25, 2003, and arrived to work that day at 9:30 a.m. He explained that he and three to six other employees were filling customer orders that morning, which required them to get the items asked for by the customers from the warehouse or the yard outside depending on where the items were stored. Robinson testified he did not see anybody around the stacks of plywood that morning, but acknowledged he was in and out of the warehouse all morning and was not near the plywood the entire time.

Robinson also testified that, later that day, he used a forklift to begin moving the stacks of plywood inside the fenced portion of the lumberyard. He explained that the area outside the fence was where delivered materials were unloaded from tractor-trailer trucks and the area inside the fence was where the materials were subsequently "stored and secured." He stated that, after removing the upper unit of plywood from one of the stacks, he discovered two clear plastic bags "of stuff" on top of the bottom unit in that stack. Robinson notified Sams, who called the police.

Officer Hogan returned to the lumberyard at approximately 1:45 p.m. and retrieved the two plastic bags. Subsequent laboratory analysis revealed the first bag contained twelve individually wrapped rocks of crack cocaine and the second bag contained marijuana. A single latent fingerprint of value for identification purposes was discovered on the plastic bag containing the twelve rocks of crack cocaine. Analysis of the fingerprint revealed it did not match appellant's fingerprints. No latent fingerprints of value for identification purposes were found on the other bags of drugs retrieved from the stacks of plywood.

Testifying for the Commonwealth, Robin Young of the fingerprint comparison section of the Division of Forensic Science explained that "circumstances have to be just right for a print to be left on a particular surface" and "not everything that is touched can . . . develop a print." Young further explained that fingerprints are "very fragile in nature" and may be destroyed "if you were to just wipe across [it] or if it comes into contact with your clothing or another item." Thus, Young stated, "[just] because there is no print of someone's on [an object] doesn't mean that person didn't touch it."

The Commonwealth introduced three photographs depicting (1) the alley behind the shopping center and the adjacent area outside the lumberyard's fence where the stacks of plywood were located on the morning of March 25, 2003, (2) the lumberyard's fenced-in yard behind the warehouse, and (3) the view from inside the warehouse of the area where the stacks of plywood

were located. Collectively, the photographs showed that the area where the plywood was located was visible from only certain areas of the lumberyard warehouse and yard; that, in addition to the shopping center, there were several houses and commercial buildings in the vicinity of the lumberyard; the area where the plywood was located was unfenced and immediately accessible to the public from the adjacent alley; and the alley was by all appearances a public roadway routinely used for vehicular travel and parking.[1]

The Commonwealth also introduced a certified copy of a sentencing order showing appellant had been previously convicted two or more times of possession of a controlled substance with the intent to distribute.

At the conclusion of the Commonwealth's evidence and at the close of all the evidence, appellant moved to strike the evidence, arguing the evidence was insufficient to prove he constructively possessed the drugs found among the stacks of plywood. The trial judge denied both motions, and the jury subsequently convicted appellant of possession of cocaine with the intent to distribute, third or subsequent offense, and possession of marijuana.

This appeal followed.

## II. ANALYSIS

On appeal, appellant contends the evidence was insufficient as a matter of law to support his convictions. Specifically, he argues the Commonwealth's evidence failed to prove beyond a reasonable doubt that he constructively possessed the cocaine and marijuana found in the stacks of plywood. In response, the Commonwealth argues appellant's proximity to the drugs and his actions and demeanor while in the presence of the police officers sufficiently proved constructive possession. We agree with appellant.

---

[1] Although not taken the day of appellant's arrest, the photograph of the alley presented by the Commonwealth at trial depicts several vehicles parked along the alley in the vicinity of the area where the plywood was located.

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1997). "The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is 'plainly wrong or without evidence to support it.'" Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005) (quoting Code § 8.01-680). We will not "substitute our judgment for that of the trier of fact," Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002), but will determine "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

"'Possession of a controlled substance may be actual or constructive.'" McGee v. Commonwealth, 4 Va. App. 317, 322, 357 S.E.2d 738, 740 (1987) (quoting Archer v. Commonwealth, 225 Va. 416, 418, 303 S.E.2d 863, 863 (1983)).

> To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control."

Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)). "Proof of constructive possession necessarily rests on circumstantial evidence; thus, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Burchette v. Commonwealth, 15 Va. App. 432, 434, 425 S.E.2d 81, 83 (1992) (quoting Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983)). "Although the Commonwealth is not required to disprove every remote possibility of innocence, it

- 6 -

must disprove those theories of innocence that 'flow from the evidence itself.'" Feigley v. Commonwealth, 16 Va. App. 717, 724, 432 S.E.2d 520, 525 (1993) (quoting Black v. Commonwealth, 222 Va. 838, 841, 284 S.E.2d 608, 609 (1981)); see also Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993) ("The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.").

Applying these principles to the present case, we hold the Commonwealth failed to present evidence of appellant's acts or other circumstances from which the jury could properly conclude beyond a reasonable doubt that appellant possessed the drugs found in the stack of plywood. Appellant's only proven connection to the drugs was his proximity to them when Officer Hogan observed him walking out from behind the stacks of plywood. No evidence proved that Officer Hogan or anyone else saw appellant with the bags of drugs in his actual possession or saw him place the drugs in the plywood. Furthermore, the Commonwealth offered no evidence that appellant made any statements tending to show he possessed the drugs or knew the drugs were in the plywood. As the Commonwealth acknowledges, appellant's mere proximity to the drugs is not enough to prove he possessed the drugs. See Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982) (noting that, while a factor to be considered in determining whether the accused constructively possessed the drugs at issue, "mere proximity to [the] contraband is insufficient to establish possession"). Likewise, the "mere opportunity to commit an offense raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.'" Christian v. Commonwealth, 221 Va. 1078, 1082, 277 S.E.2d 205, 208 (1981) (quoting Simmons v. Commonwealth, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968)).

The Commonwealth contends appellant's flight, when told by Officer Hogan that he would have to be patted down before being transported to the police station, connects him to the drugs. The explanation for appellant's flight, however, is just as likely found in his not wanting to be transported to the police station in connection with Officer Hogan's investigation of the unrelated check matter as it is in his desire to avoid being patted down. In telling appellant they "needed to go to the police department" to resolve the check matter, Officer Hogan clearly informed appellant that he was suspected of criminal activity and had no option but to accompany the officer. Thus, appellant's flight is equally explained as an attempt to avoid the immediate consequences of that investigation. It is well settled in Virginia that evidence that is equally susceptible to two interpretations, one of which is consistent with the accused's innocence of the charged offense, cannot be arbitrarily used to support the interpretation that incriminates the accused of the charged offense. Harrell v. Commonwealth, 11 Va. App. 1, 11, 396 S.E.2d 680, 685 (1990) (citing Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969)).

Similarly, the Commonwealth claims the fact that appellant "calmly walked out [from behind the stacks of plywood] when Officer Hogan reappeared" and the fact that appellant's demeanor during the search changed from "talkative and cooperative" to "less talkative and distant" when the police retrieved the first bag of cocaine from the plywood tend to show that appellant constructively possessed the drugs. However, the evidence that appellant walked, rather than ran, from behind the plywood is equally consistent with the hypothesis that, seeing no one chasing him on foot and no marked police vehicle in pursuit of him, appellant thought he had successfully eluded Officer Hogan and avoided the immediate consequences of the officer's investigation of the check matter. Thus, he no longer needed to run. Indeed, it would make him more noticeable and appear more suspicious if he did. Nothing in the record indicates appellant

saw Officer Hogan exit his police vehicle in the shopping center parking lot or that he was otherwise aware that Officer Hogan was driving an unmarked police vehicle.

Likewise, the evidence concerning appellant's change of demeanor is equally consistent with the hypothesis that appellant was "talkative and cooperative" during the initial stages of the search because he had no knowledge of the presence of the drugs and was "less talkative and distant" upon the discovery of the bag of cocaine because he realized the police were holding him accountable for the drugs they had just found. Such a change in demeanor is exactly the type of reaction most innocent people would have under those circumstances. Thus, the evidence of appellant's conduct relied on by the Commonwealth does not support an inference of guilt. See Sutphin v. Commonwealth, 1 Va. App. 241, 248, 337 S.E.2d 897, 900 (1985) ("Whenever the evidence leaves indifferent which of several hypotheses is true, or merely establishes only some finite probability in favor of one hypothesis, such evidence does not amount to proof of guilt beyond a reasonable doubt.").

Moreover, "[f]or a conviction to rest properly on circumstantial evidence, an unbroken chain of circumstances proving the defendant's guilt must be established." Davis v. Commonwealth, 39 Va. App. 96, 100, 570 S.E.2d 875, 877 (2002) (citing Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971)). "[S]uspicion or even probability of guilt is not sufficient." Gordon, 212 Va. at 300, 183 S.E.2d at 737.

Here, there are two "fatal gap[s] in the circumstantial evidence." Id. at 301, 183 S.E.2d at 737. First, there is no evidence that the drugs retrieved by the police from the stacks of plywood were not in the plywood when it was unloaded at the lumberyard. No evidence suggests the plywood was inspected when Sams unloaded it from a tractor-trailer truck around 8:30 a.m. on March 25, 2003, or that the method used by Sams to unload and stack the units of plywood would have necessarily revealed the presence of the drugs. Cf. Davis, 39 Va. App. at 101, 570 S.E.2d at

877 (finding that the chain of circumstances proving possession was unbroken because, among other things, the evidence proved the contraband was not present in the area before the defendant was there).

Additionally, the stacks of plywood were wholly unsecured, inconsistently monitored, and immediately accessible to the employees of the lumberyard and the general public between 8:30 a.m. and 11:15 a.m. that day. The evidence demonstrates the stacks of plywood were in an area that was unfenced, there were several houses and commercial buildings in the vicinity of the lumberyard, and the alley adjacent to the area where the plywood was located was a public roadway routinely used for vehicular travel and parking. Both Sams and Robinson testified they were going in and out of the lumberyard warehouse all morning, filling customer orders, and did not monitor the area where the plywood was located. Indeed, neither testified they even saw appellant in that area. Cf. id. (finding that the chain of circumstances proving possession was unbroken because, among other things, the evidence proved the area where the contraband was found was continuously monitored throughout the pertinent period).

These gaps in the Commonwealth's circumstantial evidence render the evidence connecting appellant to the drugs too tenuous to prove his guilt. See, e.g., Olsen v. Commonwealth, 212 Va. 545, 546, 186 S.E.2d 51, 52-53 (1972) (per curiam) (holding that drugs found in the area of the defendant's arrest had "no tendency to prove guilt" because the area was "not guarded" and the area was "accessible to many people, any of whom could have hidden the contraband . . . before . . . [the defendant's] arrest"). Thus, to infer from the circumstantial evidence presented in this case that appellant constructively possessed the drugs found in the plywood would be to engage in speculation and conjecture.

This conclusion is buttressed by the fact that the only fingerprint found on the bags of drugs did not match appellant's fingerprints. While not proof of appellant's innocence, the

- 10 -

absence of appellant's fingerprints on the bags of drugs and the presence of someone else's fingerprint on one of the bags of drugs strongly support the reasonable hypothesis of innocence that someone other than appellant placed the drugs in the stacks of plywood for subsequent retrieval by himself or another and was, thus, the true possessor of the drugs. Indeed, in light of the Commonwealth's theory of the case that appellant was holding the bags of drugs "not in his pockets, but . . . down the front of his pants" in his ungloved hands, the fact that the only fingerprint found on the bags of drugs belonged to someone other than appellant is striking. See generally Avent v. Commonwealth, 209 Va. 474, 479-80, 164 S.E.2d 655, 659 (1968) (holding that fingerprint evidence may be used in connection with other circumstantial evidence to establish criminal agency).

We hold, therefore, that the Commonwealth's circumstantial evidence is insufficient, as a matter of law, to prove beyond a reasonable doubt that appellant constructively possessed the cocaine and marijuana found in the stacks of plywood. The circumstances proved in this case are not inconsistent with innocence and do not exclude every reasonable hypothesis of innocence. At most, they establish a mere suspicion that appellant possessed the drugs. "Suspicion, however, no matter how strong, is insufficient to sustain a criminal conviction." Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981). Consequently, the trial court erred in finding the Commonwealth's evidence sufficient, as a matter of law, to prove appellant's guilt beyond a reasonable doubt.

## III. CONCLUSION

For these reasons, we reverse appellant's convictions and dismiss the charges on which they are based.

Reversed and dismissed.

Beales, J., dissenting.

The majority "hold[s] the Commonwealth failed to present evidence of appellant's acts . . . from which the jury could properly conclude beyond a reasonable doubt that appellant possessed the drugs found in the stack of plywood." I respectfully disagree and, therefore, dissent.

Initially, it should be noted that, "[w]hen considering the sufficiency of the evidence on appeal, 'the jury's verdict will not be disturbed unless it is plainly wrong or without evidence to support it.'" Guda v. Commonwealth, 42 Va. App. 453, 457, 592 S.E.2d 748, 750 (2004) (quoting Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999)) (additional citation omitted). Thus, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, and as the majority correctly notes, this Court should determine "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)) (additional citation omitted). In addition, "The credibility of the witnesses, the weight accorded their testimony and the inferences to be drawn from proven facts are matters to be determined by the fact finder." Guda, 42 Va. App. at 457, 592 S.E.2d at 750.

Succinctly stated, the evidence proved that appellant acted in a furtive manner when initially approached by Officer Hogan and refused to remove his hands from the inside of his pants. When asked to show his hands, appellant exclaimed that he had nothing on him and took flight. After pursuing appellant in his police vehicle, Hogan saw appellant emerge from a stack of plywood in an alley. Appellant did not resume his flight. He merely walked out from the

- 12 -

stack of plywood and did not attempt to run again, even when approached by the officer. The officer indicated appellant then seemed talkative and cooperative. In searching the area from where appellant emerged, officers found a plastic bag with eight individually wrapped rocks of crack cocaine. Later, two additional plastic bags were found – one with marijuana and one with twelve more individually wrapped rocks of crack cocaine. After the first bag of cocaine was recovered, appellant became much less talkative and more distant in his manner. Employees of the business did not see anyone else in the vicinity of the plywood from the time it was delivered that morning until the police search less than three hours later, although they conceded that they were not constantly watching the area.

The majority concludes that the circumstantial evidence is too tenuous to establish appellant's guilt and offers several alternative explanations for appellant's actions. For example, the majority characterizes appellant's flight as consistent with appellant "not wanting to be transported to the police station in connection with . . . the unrelated check matter as it is in his desire to avoid being patted down." However, while appellant's attitude toward the officer changed when Officer Hogan approached him a second time, the "check matter" was still outstanding. The most logical inference, given appellant's willingness to talk to police after he ran (and the one apparently adopted by the jury), is that appellant got rid of the contraband that he feared Officer Hogan would find earlier.

The majority also theorizes that the narcotics were already present in the exact area where appellant emerged, i.e., that appellant was merely a victim of circumstance. However, the stacks were newly placed in this area less than three hours earlier. No one other than appellant was seen near the plywood. Also, as this Court has noted previously, people generally do not abandon drugs, see Brown v. Commonwealth, 15 Va. App. 1, 9, 421 S.E.2d 877, 883 (1992) (*en banc*) ("[I]t is unlikely anyone who is a transient would leave a thing of great value in a place

- 13 -

not under his dominion and control."), unless, of course, they are forced to hide them for fear of being discovered by the police. As this Court said previously, "The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs." Id. at 10, 421 S.E.2d at 883. The jury clearly believed appellant was the person who put the drugs in the plywood stacks.

The majority, in offering these alternative explanations for the evidence presented in this case, substitutes this Court's judgment for that of the jury. Consequently, I believe the inferences the majority draws from the proven facts in this case invade the province of the jury in its role as the fact finder.[2] Moreover, the majority's review of the facts seems to violate the longstanding principle that a Virginia appellate court must examine the facts in the light most favorable to the prevailing party below (here, the Commonwealth). See Stevens v. Commonwealth, 272 Va. 481, 484, 634 S.E.2d 305, 307 (2006); Moore v. Commonwealth, 47 Va. App. 55, 58, 622 S.E.2d 253, 255 (2005) (*en banc*). As we have explained, "That principle requires us to discard the evidence of the accused in conflict with that of the Commonwealth and to regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Guda, 42 Va. App. at 455, 592 S.E.2d at 749. Having done so, therefore, an appellate court, it seems to me, errs in holding that no rational trier-of-fact could have found appellant guilty beyond a reasonable doubt of the crimes in this case.

---

[2] The majority discusses the lack of fingerprint evidence available in this case and the fact that the only comparable fingerprint found on the seized narcotics did not match appellant's fingerprints. However, forensic investigator Young testified as to the fragile nature of fingerprints and noted that just "because there is no print of someone's on it doesn't mean that person didn't touch it." Young answered in the affirmative when asked whether pulling something out of a person's pants or pockets might wipe off the fingerprint. The jury apparently found this testimony credible. Because the jury was the sole arbiter of witness credibility and the trier-of-fact in this case, I would not disturb that finding on appeal.

In sum, I believe that, based on this record, a jury acting as the rational trier-of-fact could conclude beyond a reasonable doubt that appellant possessed the seized narcotics (with intent to distribute the cocaine). Therefore, I do not believe that the jury's verdict was plainly wrong or without evidentiary support, nor do I believe the trial court erred in denying appellant's motion to strike the evidence at the close of the case or in later denying the motion to set aside the verdicts. For that reason, I respectfully disagree with the majority's conclusion and must dissent.