UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Petty and Chafin
Argued at Lexington, Virginia


LORRIE ARRINGTON PADGETT

                                                                  MEMORANDUM OPINION[*] BY
v.         Record No. 1372-13-3                          JUDGE TERESA M. CHAFIN
                                                                         MAY 27, 2014

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                                        John T. Cook, Judge

              Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for
              appellant.

              Victoria Johnson, Assistant Attorney General (Mark R. Herring,
              Attorney General, on brief), for appellee.


       In a bench trial, Lorrie Arrington Padgett ("Padgett") was convicted of indecent liberties

with a child by a person in a custodial or supervisory relationship in violation of Code

§ 18.2-370.1.  On appeal, Padgett maintains the trial court erred in holding that she was acting in

a custodial or supervisory relationship when she engaged in sexual intercourse with the minor.

For the reasons that follow, we affirm the decision of the trial court.

                                           BACKGROUND

       "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence showed that Padgett met the

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

victim in this case, N.A., when he dated Padgett's daughter. After N.A. and Padgett's daughter ended their relationship, Padgett remained in contact with N.A. During January through March 2012, Padgett and N.A., who was seventeen years old at the time, "hung out" together, went to the mall, and shared meals. Although N.A. called Padgett by her first name, he also called her "mom" on occasion.

During the time period at issue, Padgett occasionally drove N.A. to school, church, and other activities and events without his parents. N.A. testified he asked his mother for permission to go places with Padgett. N.A.'s mother testified that she would allow Padgett to take N.A. to activities and events, and she would discuss with Padgett when N.A. was to be home and often asked "what [N.A. and Padgett] were doing." On one such occasion, N.A. asked his mother if Padgett could drive him to church. N.A. testified that his mother "said it was okay." N.A. stated he and Padgett had developed a plan in which N.A. would ask his mother if Padgett could drive him to church. As part of the plan, when Padgett picked up N.A., they went to a fish hatchery where they engaged in sexual intercourse. Afterwards, they drove to church. After church, Padgett returned N.A. to his home.

N.A.'s mother later found "pages upon pages" of Facebook messages between her son and Padgett that led her to confront Padgett and call the police. Padgett and N.A.'s mother had a text message conversation that culminated in Padgett admitting to having had sex with N.A. Additionally, Padgett "acknowledged her mistake" with N.A. to the investigating officer.

ANALYSIS

Code § 18.2-370.1(A) provides that "[a]ny person 18 years of age or older who, except as provided in § 18.2-370, maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally" engages in certain proscribed acts "shall be guilty of

a Class 6 felony." The purpose of the statute "is to protect minors from adults who might exploit certain types of relationships." Sadler v. Commonwealth, 276 Va. 762, 765, 667 S.E.2d 783, 785 (2008). The key question in determining whether a given relationship falls within the statute is whether the defendant "had the responsibility for and control of the [child's] safety and well-being." Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999); see also Guda v. Commonwealth, 42 Va. App. 453, 459-60, 592 S.E.2d 748, 750-51 (2004) (rejecting the argument that the child must be specifically entrusted to the defendant's care through explicit parental delegation of responsibility).

Linnon v. Commonwealth, 287 Va. 92, 98, 752 S.E.2d 822, 826 (2014). "Whether such a relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis." Sadler, 276 Va. at 765, 667 S.E.2d at 785.

"The word 'custody' has been defined generally as 'the care and control of a thing or person.'" Krampen, 29 Va. App. at 167, 510 S.E.2d at 278 (quoting Black's Law Dictionary 384 (6th ed. 1990)). In applying Code § 18.2-370.1, we "have broadly construed the meaning of custody, going beyond legal custody, to include those with informal, temporary custody." Guda, 42 Va. App. at 458, 592 S.E.2d at 750. A "custodial or supervisory relationship" includes adults who "have a temporary, custodial relationship with a child, such as, 'teachers, athletic instructors and baby-sitters.'" Krampen, 29 Va. App. at 168, 510 S.E.2d at 278 (quoting Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972)). We have emphasized that "'Code § 18.2-370.1 does not require the specific entrustment of the child'" but instead requires only a showing that the defendant exercised "'care and control over the child, with the care including the "responsibility for and the control of the child's safety and well-being."'" Kolesnikoff v. Commonwealth, 54 Va. App. 396, 404, 679 S.E.2d 559, 563 (2009) (quoting Guda, 42 Va. App. at 459, 592 S.E.2d at 751; Krampen, 29 Va. App. at 168, 510 S.E.2d at 279).

Here, a rational fact finder could conclude beyond a reasonable doubt that Padgett committed the offense while in a supervisory or custodial relationship over N.A. Padgett, with the permission of N.A.'s mother, was ostensibly driving N.A. to church when she drove to another location where they had sexual intercourse. From this evidence, the trial court found the victim was "turned over to [appellant's] custody." We note that in Krampen, this Court found the defendant maintained the requisite custodial or supervisory relationship over the victim under similar circumstances to this case. In Krampen,

> [t]he evidence established that, with the permission of the victim's mother, [Krampen] willingly drove the victim home from church. As the only adult present during these trips, [Krampen] had the responsibility for and control of the victim's safety and well-being while she was in his care. His contact with the victim was in the nature of a baby-sitter, i.e., one entrusted with the care of the child for a limited period of time.

Krampen, 29 Va. App. at 168, 510 S.E.2d at 278-79. Likewise, we conclude that Padgett's contact with N.A. was in the nature of a baby-sitter, as she was entrusted with N.A.'s safety and well-being by N.A.'s mother.

## CONCLUSION

The Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Padgett maintained the requisite custodial or supervisory relationship over N.A. when the two engaged in sexual relations. Accordingly, we affirm Padgett's conviction.

Affirmed.