COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Causey and Senior Judge Petty
Argued by videoconference


MARK ANTHONY GREEN
                                                          MEMORANDUM OPINION* BY
v.         Record No. 1612-23-1                    JUDGE DORIS HENDERSON CAUSEY
                                                               MARCH 4, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Charles E. Haden for appellant.

Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Mark Anthony Green of two counts of

forcible sodomy, in violation of Code § 18.2-67.1, three counts of aggravated sexual battery, in

violation of Code § 18.2-67.3, and three counts of taking indecent liberties with a child while in a

custodial or supervisory relationship, in violation of Code § 18.2-370.1.  On appeal, Green contends

that the court erred in: (1) denying his motion to strike the evidence as insufficient to prove beyond

a reasonable doubt that he was guilty of these offenses, (2) denying his motion *in limine* to exclude

evidence of his prior aggravated sexual battery conviction during the guilt/innocence phase of the

trial, and (3) denying his motion to strike for cause a venireperson who stated that hearing about sex

offenses committed against a child was "a little much" and she "[did not] know that [she] would be

fair . . . [she thought that] it would be difficult."  For the reasons stated below, we affirm the trial

court's judgment and remand to correct clerical errors in the conviction and sentencing orders.

* Pursuant to Code § 17.1-413(A), this opinion is not designated for publication.

BACKGROUND[1]

Since at least 2014, Mark Anthony Green had been in a relationship with Bobbie Tucker. On February 16, 2008, Tucker gave birth to a girl, A.T.[2] On September 7, 2016, Tucker gave birth to a boy, C.T., who was Green's biological son.

In 2018, Green and Tucker's relationship with one another was described as "[m]ore on than off." "[M]ost of the time" Green lived with Tucker, A.T., and Tucker's four younger children (three boys and one girl), in her townhouse in Newport News, Virginia. A.T.'s great-uncle occasionally stayed at her house as well. When Green stayed with Tucker, he slept in her bedroom. A.T. shared a bedroom with her sister, but she occasionally slept with her mother in her mother's room. When A.T. slept in Tucker's bedroom, Green was there as well. While Green was living at Tucker's house, he physically disciplined his son. He physically disciplined A.T. as well. On one occasion, he slapped her face while she was in the living room near the laundry room door in her house.

Between January 1, 2018 and October 31, 2018, Green "often" sexually assaulted A.T. by inserting "his fingers in her vagina" and "putting his mouth on" it. At the time, A.T. was ten years old. Although finding it "hard to keep them all separate," A.T. later recalled at least three distinct incidents of sexual abuse. The first incident happened in Tucker's bedroom while A.T. was sleeping between Tucker and Green in their king-size bed. While lying on her back, A.T. woke up to "feeling [Green] on top of [her]." He was lying "chest-to-chest" on her and her "bottoms were off" even though she had worn clothes to bed. At that moment, A.T. felt Green touching her vagina

---

[1] Applying familiar principles of appellate review, we will state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "In doing so, we [will] discard any of [Green's] conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

[2] We refer to the minor children by their initials to protect their privacy.

with one of his hands. She knew that his fingers were inside her vagina because she felt his long fingernails. Although "[i]t hurt," she did not say anything because she was scared. Green then "tried to touch [A.T.] with his penis." He tried to insert his penis into her vagina, but it "couldn't fit" and, again, "[i]t hurt." A.T. knew that Green was using his penis because she could feel it "getting longer and harder." Green also touched A.T.'s vagina with his tongue. When asked later if Green licked "totally outside" or "where she would wipe," A.T. testified that he licked her "[w]here [she] would wipe." For the duration of this ordeal, A.T. believed that her mother was asleep beside her. After Green stopped the abuse, he stayed in the bed with A.T. When A.T. woke the next morning, however, Green was gone.

The second incident of sexual abuse also happened in the bedroom that Green shared with Tucker. The second incident was on a different date, and Tucker was not present. That time, the sexual abuse began when A.T. entered the room and lay down on the bed "[b]ecause [Green] told [her] to." Green then removed his clothes and instructed A.T. to undress. After A.T. complied and lay down, Green knelt on the foot of the bed, positioned himself on top of her, and tried to put his penis in her vagina. He also instructed A.T. to not tell anyone and that "it was normal." He also said that "it was going to be all right and it wouldn't hurt." But it did hurt. Afterwards, Green told A.T. that he wanted her to put her hands and mouth on his penis, and she again complied with his instructions. She put her mouth and hands on Green's erect penis and it went "[p]ast her lips" and to her throat.

The third incident of sexual abuse happened in A.T.'s bedroom. On that occasion, A.T. was alone, sleeping in her bed, lying on her back, and wearing clothes when Green woke her. He was naked and was lying flat on her, "chest to chest." Holding himself up by his hands, he tried to put his penis inside of A.T.'s vagina. Once again, he was unable to insert his penis and "[i]t hurt." Green also put his fingers inside A.T.'s vagina. Once again, Green's long fingernails hurt A.T.

A.T. told Tucker about the first incident approximately one week after it happened. A.T. waited to tell Tucker because she was scared that Green would hit both her and Tucker. As far as A.T. knew, Tucker did nothing in response. A.T. believed that Tucker feared Green. Later, A.T. told Tucker about Green's sexual abuse of her a second time. A.T. thought that telling Tucker again would cause something to change, that her mother would protect her, but again her mother did nothing.

In October 2018, for reasons unrelated to Green's sexual abuse, A.T. and her siblings were removed from Tucker's house and were placed in the custody of her aunt, Crystle Davis-Hill. Approximately ten months later, Davis-Hill noticed that A.T. was cutting her arms with a box cutter. This self-destructive behavior prompted Davis-Hill to talk to A.T. A.T. then disclosed the details of Green's sexual abuse to someone other than her mother. That disclosure ultimately led to a police investigation and to A.T.'s forensic interview conducted by Jennifer Howe of the CHKD Child Advocacy Center. During Howe's interview, A.T. admitted that, in 2018, Green had sexually abused her on more than one occasion by attempting to insert his penis into her vagina, touching her vagina with his fingers and tongue, and putting his penis in her mouth.

Based on evidence related to the three incidents between January 1, 2018 and October 31, 2018, which is when Green sexually abused A.T., a grand jury returned indictments charging Green with forcible sodomy, aggravated sexual battery, and custodial indecent liberties with a child for each incident. He was charged with two counts of forcible sodomy (cunnilingus), in violation of Code § 18.2-67.1 (Case Numbers CR21000089-01 and CR21000089-02), one count of forcible sodomy (fellatio), in violation of Code § 18.2-67.1 (Case Number CR21000089-03), three counts of aggravated sexual battery, in violation of Code § 18.2-67.3 (Case Numbers CR21000089-04, CR21000089-05, and CR21000089-06), and three counts of custodial indecent liberties with a child,

in violation of Code § 18.2-370.1 (Case Numbers CR21000089-09, CR21000089-10, and CR21000089-11).

Before his jury trial, Green filed a motion *in limine* in response to the Commonwealth's notice of its intent to introduce evidence of his prior aggravated sexual battery conviction, as required by Code § 18.2-67.5:2(A).[3] Specifically, Green objected to the Commonwealth's intent to introduce a certified copy of his 2003 conviction/sentencing order during the guilt phase of the trial and asserted that the order was "only relevant and should only be admissible during the sentencing phase" of the trial. Though conceding that an opinion adverse to his position had been issued by the Court of Appeals in *English v. Commonwealth*, No. 1065-21-3, 2022 Va. App. LEXIS 546 (Nov. 1, 2022), Green asserted that "the logic used by the Court of Appeals to permit such evidence during the guilt phase was and is flawed." At the start of the motion's hearing, defense counsel conceded that "the Supreme Court's decision in *Washington v. Commonwealth*[, 272 Va. 449 (2006),] is unassailable." Accordingly, the court and counsel for the parties agreed to the substance and timing of the limiting instruction to be given to the jury regarding evidence of a prior conviction. The court then denied Green's motion *in limine*.

During voir dire, the trial judge asked the potential jurors several questions, including: "Do each of you understand that the defendant, Mr. Green, is presumed by law to be innocent of the offenses for which he is charged and that presumption of innocence remains with him throughout this trial?" Every venireperson replied, "Yes." He also asked, "Do each of you understand that the law requires the Commonwealth to prove Mr. Green's guilt beyond a reasonable doubt?" Again, every potential juror said, "Yes." For his last question to the entire venire, the judge asked: "Do any of you have any reason whatsoever that you could not give a fair and impartial trial to the

---

[3] On February 26, 2003, Mark Anthony Green, who was born on February 28, 1964, was convicted of aggravated sexual battery, in violation of Code § 18.2-67.1, and was sentenced to eight years in prison, with five years and six months suspended for eight years.

Commonwealth of Virginia or to the defendant, Mr. Green, solely based upon the law?" Every venireperson said, "No."

Later, counsel for Green asked, "[I]s there anyone in this panel that really just doesn't want to serve at all?" In response, twelve venirepersons raised their hands. The court directed "[defense counsel], somebody," to write down the numbers of "[e]verybody that . . . raised their hands to [co-defense counsel's] question" so that they could each be questioned individually. Juror No. 34 was one of the twelve venirepersons who responded affirmatively to counsel's question, each of whom was privately examined in a conference room. In explaining her answer, Juror No. 34 stated that she "had gone back and forth with the impartialness of everything." She admitted that, "Being pregnant, [she's] not usually a very emotional person but even kind of hearing the charges was a little much, and [she] [did not] know that [she] would be fair." Defense counsel asked, that "[i]f the judge ordered [her] to put that aside," and to "put down any emotions [she] might have about the case," if "[she thought she] could or [did she] think [her] current status would be enough that [she] wouldn't be able to at all?" Juror No. 34 responded, "it would be difficult," but "[i]f I had to, I would hope that, yes, that I could." Hearing these answers, the trial court intervened: "I am going to give you instructions at the end that the Commonwealth and Defense and I would have gone over, and those instructions that you're going to have to apply to the facts and evidence that you hear throughout this trial. Could you do that?" Juror No. 34 replied, "I would like to say yes." She agreed that she could "critically examine the witnesses on the stand and apply [their testimonies] to any other evidence that comes in and make a determination based on the law," and even if she were emotional, she could "[p]robably" be fair and impartial.

After hearing from Juror No. 34, Green moved to strike her for cause. Noting that she was "borderline" and was "shaking her head" while stating that she "would probably try" to be

impartial, Green argued that Juror No. 34 appeared to be uncertain about how "her current state [was] going to affect her" and she was "concerned that it [would] affect her." The Commonwealth, on the other hand, argued that Juror No. 34 was "trying to be conscientious" and "trying to identify every potential reaction [she] could possibly have." The Commonwealth reminded the court that Juror No. 34 had said that, never having been pregnant or on a jury with "these kind[s] of charges," she could not know in advance whether being pregnant would affect her ability to apply the court's instructions of law to the evidence in this case. The Commonwealth acknowledged that the potential juror "did indicate that emotion would be part of her decision-making," but argued that "[e]motion is always part of human decision-making."

The court denied the motion to strike. In explaining its ruling, the court said that Juror No. 34's answers to its questions and the questions of both counsel indicated that she could be fair and impartial. Of the twelve venirepersons who had indicated their reluctance to "serve at all," three were excused with agreement from both parties, and four were excused after the court sustained defense counsel's motions to strike for cause. Of defense counsel's five motions to strike, only one—the motion to strike Juror No. 34—was denied. Green later used one of his peremptory strikes to remove Juror No. 34 from the jury panel.

Given the court's denial of Green's motion *in limine* to exclude evidence of his prior aggravated sexual battery conviction during the guilt phase of the trial, the court and counsel for the parties addressed the issue during voir dire. Green's counsel began the discussion by alerting the potential jurors that they would hear about Green's prior conviction for aggravated sexual battery, but that they should not consider it "with regards to guilt or innocence."

During the trial, A.T. acknowledged that she was angry with Green for how he treated her mother and for physically disciplining her and her brother. She also admitted that she "hated" Green and hated living with him.

At the conclusion of the Commonwealth's case in chief, Green, by counsel, made "a motion to strike, particularly with regards to the indecent liberty by a custodian." Green argued that there was insufficient evidence to establish even a prima facie basis for finding that he "had any sort of actual custodial status." He asserted that there was "no evidence that he was entrusted with [A.T.'s] care" and "was responsible for the day-to-day caretaking of" her. In response, the Commonwealth argued that Green was A.T.'s de facto stepparent because he lived with Tucker and her children, including his biological son, lived at her house most of the time, and physically disciplined both his son and A.T., which showed he had a role of caretaker. Green, in turn, counter-argued that: (1) "a relationship to a sibling has nothing to do with his relationship to" A.T. and (2) "mere presence alone in the home is not enough." After noting the breadth of the case law on the issue of what constitutes a custodial or supervisory relationship with a child under Code § 18.2-370.1, the court denied the motion.

At the conclusion of all the evidence, Green renewed his motion to strike the evidence relating to the three charges of custodial indecent liberties with a child. Focusing on the first incident, he argued that Green was neither a custodian nor a supervisor of A.T. because: (1) he was unconscious for most of the time before "whatever allegedly occurred," and (2) A.T.'s mother was next to her in the bed when the alleged sexual abuse occurred and, by her mere presence, she was fulfilling her role as A.T.'s custodian. He also broadened his renewed motion to strike to include the evidence relating to his two forcible sodomy by cunnilingus charges. Addressing the first incident, he argued that A.T. only testified that he placed his tongue on her vagina; she did not testify that "there was any sort of insertion." Addressing the third incident, Green asserted that A.T. said "that he used his tongue, but she [did]n't really say what he did with it." With respect to the indecent liberties charges, the Commonwealth argued that Green, as Tucker's long-time boyfriend who predominantly stayed at Tucker's house and disciplined A.T., was "essentially acting as a

stepparent." It also argued that Green was "absolutely in a supervisory role" during the first incident because Tucker was asleep. With respect to the charges of forcible sodomy by cunnilingus, the Commonwealth argued that A.T.'s testimony was sufficient to prove that Green's use of his tongue on her vagina involved "penetration" because, when asked if he licked "totally outside" her vagina or "where she would wipe when she goes to the bathroom," she said that it was where she would wipe. The court denied this motion to strike as well.

The jury subsequently found Green guilty of one count of forcible sodomy by cunnilingus, one count of forcible sodomy by fellatio, three counts of aggravated sexual battery, and three counts of custodial indecent liberties with a minor. As to the other count of forcible sodomy by cunnilingus, the jury found Green not guilty. The verdict forms for the two charges of forcible sodomy by cunnilingus contained no case numbers or other distinguishing information. Recognizing this fact, the court opined that "it [did]n't make any difference" which case number is used for Green's conviction for the charge of forcible sodomy by cunnilingus, and Green's counsel agreed. Based on the jury's verdicts, the trial court convicted Green of the offenses and cited case numbers for the three aggravated sexual battery charges and the three indecent liberties charges, but not for the charge of forcible sodomy by cunnilingus or the charge of forcible sodomy by fellatio. Later, the court entered its conviction order that recited the jury's verdicts and listed two counts of forcible sodomy in the table of offenses for which Green was convicted. This table included the case numbers for both cunnilingus charges (CR21000089-01 and CR21000089-02) and did not include the case number for the fellatio charge (CR21000089-03). Similarly, at the sentencing hearing, the court used the case numbers for both cunnilingus charges in pronouncing Green's sentences for the one charge of forcible sodomy by cunnilingus and the one charge of forcible sodomy by fellatio. The court's sentencing order and amended sentencing order reflected this pronouncement of sentence and listed the case numbers for both cunnilingus charges in the table of

offenses for which Green was found guilty. In his notice of appeal, Green cited these two case numbers and omitted the case number for the fellatio charge.

ANALYSIS

As reflected by his three assignments of error in his brief,[4] Green alleges that the trial court committed three reversible errors. First, he contends that the court erred in denying his "motion to strike the eight felony counts" because the evidence was insufficient to prove his guilt beyond a reasonable doubt. Second, he contends that the court erred in denying his motion *in limine* to exclude evidence of his prior aggravated sexual battery conviction during the guilt/innocence phase of the trial. Third, he contends that the trial court erred in denying his motion to strike for cause Juror No. 34. As explained below, we find no reversible error in this appeal.

## I. Denial of Motion to Strike the Evidence

"When faced with a challenge to the sufficiency of the evidence, [this Court must] 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it." *Crowder v. Commonwealth*, 41 Va. App. 658, 662 (2003) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). We must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kelly*, 41 Va. App. at 257 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have

---

[4] In his statement of assignments of error filed pursuant to Rule 5A:25(d), Green sets forth four assignments of error. Green has waived the fourth assignment of error—"The trial court erred in refusing to strike for cause Juror No. 34, Lewis, who admitted that 'hearing the charges [about sex offenses against a child] was a little much, and I don't know that I would be fair. . . . I think it would be difficult.'"—and the issue that it presents because he did not address it in his brief. Therefore, we will not address it. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court.").

reached a different conclusion." *Conrad v. Commonwealth*, 31 Va. App. 113, 123 (1999) (en banc) (quoting *Presley v. Commonwealth*, 256 Va. 465, 466 (1998)). Thus, when a criminal conviction is by jury, "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make" and we "let the decision stand unless we conclude no rational juror could have reached that decision." *Pease v. Commonwealth*, 39 Va. App. 342, 355 (2002) (en banc), *aff'd*, 266 Va. 397 (2003). These principles of review apply even when the appellant's assignment of error only challenges the sufficiency of the evidence to prove one element of the charged offense. *See Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017).

In this case, Green challenges the sufficiency of the evidence for each of his eight felony convictions. As we explain below, however, we must limit our review to these two questions: (1) whether the evidence was sufficient to prove the "penetration" element of the offense of forcible sodomy by cunnilingus, and (2) whether the evidence was sufficient to prove the "custodial or supervisory relationship" element of the offenses of indecent liberties with a child.

A. Clerical Errors in the Conviction and Sentencing Orders

In his first assignment of error, Green alleges that the "trial court erred in denying [his] motion to strike the eight felony counts, including two counts of forcible sodomy . . . , four counts of aggravated sexual battery . . . , and two counts of indecent liberties . . . , where the Commonwealth's evidence was insufficient to prove [him] guilty of those offenses beyond a reasonable doubt." This assignment of error is technically inaccurate. The record indicates that the trial court convicted Green of two counts of forcible sodomy, three counts of aggravated sexual battery, and three counts of indecent liberties. Also, contrary to Green's assertion in his brief, the jury did not find him guilty of two counts of forcible sodomy by cunnilingus. Rather, the indictments, jury verdict forms, and trial transcript, when read together, clearly show that the jury found Green guilty of one count of forcible sodomy by cunnilingus and one count of

- 11 -

forcible sodomy by fellatio. Due to clerical errors, the court's conviction and sentencing orders are less clear, but these errors in the conviction and sentencing orders are "[c]orrectable 'clerical mistakes' under Code § 8.01-428(B)." *Zhou v. Zhou*, 38 Va. App. 126, 133 (2002) (quoting Code § 8.01-428(B)).[5]

"Scrivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes." *Id.* Given the remedial purpose of the statute, a "clerical mistake" can be more than a written or typographical error made by a court clerk. *See Nelson v. Commonwealth*, 12 Va. App. 835, 837 (1991) (observing that "the Supreme Court [of Virginia] has repeatedly held that the language of Code § 8.01-428(B) covers more than errors committed by the clerk of courts or one of his or her employees"). It can be an oral statement mistakenly made by a trial judge during a trial or hearing, especially when the record clearly indicates the judge's mindset in making the statement. *See id.* at 838 (holding that a trial judge's misstatement on the record as to the length of incarceration that the defendant was ordered to serve was a clerical mistake correctable under Code § 8.01-428(B)). Thus, Code § 8.01-428(B) applies to a judge's factually erroneous statement, whether oral or written, when the record supports the finding that the judge did not intend to make that statement.

Having reviewed the entire record in this case, we find that the trial court committed clerical errors in drafting its conviction and sentencing orders. *See Haefele v. Commonwealth*,

---

[5] Code § 8.01-428(B) states:

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

75 Va. App. 591, 606 n.7 (2022) (affirming a trial court's judgment and remanding to fix a scrivener's error in a sentencing order). On pages two and three of its conviction order, styled "Corrected Jury Trial Day Two Order," the trial court correctly recited the jury's eight guilty verdicts, which specified the guilty verdict on one count of sodomy by cunnilingus and the guilty verdict on one count of sodomy by fellatio. It failed to recite, however, the jury's verdict of not guilty for the other charge of forcible sodomy involving cunnilingus. Also, on page one of the order, the court listed both cunnilingus charges (Case Numbers CR21000089-01 and CR21000089-02) in the table of charges for which Green was found guilty. The trial court failed to list the fellatio charge (Case Number CR21000089-03). In so doing, the court's conviction order erroneously suggested that the court, despite the jury's verdicts, convicted Green on two counts of forcible sodomy (cunnilingus) and acquitted him on one count of forcible sodomy (fellatio). The trial transcript shows that the trial court and counsel for the parties never agreed on which case number to use for the one conviction for forcible sodomy by cunnilingus. The jury verdict forms contained no case numbers or other identifiers to distinguish the two cunnilingus charges, yet the court's conviction order listed Case Numbers CR21000089-01 and CR21000089-02 as the case numbers for the sodomy offenses for which Green was convicted. The record is silent on how those numbers were chosen. The court later duplicated the same table of charges in its initial sentencing order and again in its subsequent sentencing order, which was "corrected" for another reason. Green's notice of appeal only contains the case numbers listed in the table on the conviction and sentencing orders. Thus, Green has not technically appealed his conviction for forcible sodomy involving fellatio (Case Number CR21000089-03), but has appealed a conviction for a charge of which the jury found him "not guilty."

We also find that at the sentencing hearing the trial court committed a clerical error by citing the case numbers for both cunnilingus charges in pronouncing its sentences for the one

- 13 -

count of forcible sodomy by fellatio and the one count of forcible sodomy by cunnilingus. The

transcript of the trial reveals that the court and defense counsel agreed that it didn't "make any

difference" which of the two case numbers for the cunnilingus charges would be used for

sentencing. The transcript of the sentencing hearing also reveals that, just before pronouncing

sentences for the cunnilingus and fellatio charges, the trial court asked the prosecutor about the

one cunnilingus charge that was "dismissed." The trial court does not reveal, however, how the

court decided to use the case numbers for both cunnilingus charges instead of the case numbers

for one cunnilingus charge and the fellatio charge. Nevertheless, this appears to be a "clerical

mistake" as well.

To be sure, "trial courts speak only through their orders and . . . such orders are presumed

to reflect accurately what transpired." *Rose v. Commonwealth*, 265 Va. 430, 435 n.2 (2003)

(quoting *McMillion v. Dryvit Sys., Inc.*, 262 Va. 463, 469 (2001)). This rebuttable presumption

may apply even when "an order conflicts with a transcript of related proceedings." *Marttila v.

City of Lynchburg*, 33 Va. App. 592, 598 (2000). Nevertheless, we "are not restricted to the

precise, technical wording of a court's order when other evidence in the record clearly

establishes that the court had a different intent." *McBride v. Commonwealth*, 24 Va. App. 30, 36

(1997). If "the record unquestionably refutes the order's recital," the order is not binding. *Jones

v. Commonwealth*, 24 Va. App. 636, 640 (1997).

Here, the record on appeal, including the recitals of the jury's verdicts in the court's

"Corrected Jury Trial Day Two Order," refutes the trial court's table of offenses for which Green

was found guilty. When read together, the indictments, the jury verdict forms, and the trial

transcript show that the jury found Green guilty of one count of sodomy by cunnilingus (either

Case Number CR21000089-01 or CR21000089-02) and one count of forcible sodomy by fellatio

(Case Number CR21000089-03).

Despite these clerical errors, we can address Green's first assignment of error as it relates to the two sodomy charges for which he was found guilty by the jury. Regarding the charge of sodomy by fellatio, we find that Green made no motion to strike the evidence as to that charge and no motion to set aside the verdict. We also find that the record reveals no reason for this Court to invoke the ends of justice exception or the good cause exception to Rule 5A:18. Therefore, even if the trial court had made no clerical mistakes in convicting and sentencing Green and his conviction for sodomy by fellatio were on appeal, Rule 5A:18 would bar this Court from considering whether the evidence was sufficient to sustain that conviction. The trial court's failure to include the charge of forcible sodomy by fellatio (Case Number CR21000089-03) in the list of charges on the first page of the conviction and sentencing orders is harmless error, as is its failure to cite the correct case number in orally pronouncing Green's sentencing on that charge. Accordingly, we remand this case to the trial court for the sole purpose of correcting the conviction and sentencing orders to reflect that Green was found guilty of one count of forcible sodomy by cunnilingus (either Case Number CR21000089-01 or Case Number CR21000089-02) and one count of forcible sodomy by fellatio (Case Number CR21000089-03), each in violation of Code § 18.2-67.1. *See* Code § 8.01-428(B); *Tatum v. Commonwealth*, 17 Va. App. 585, 592-93 (1994).

### B. Unpreserved Sufficiency of Evidence Arguments

Under the umbrella of his general assignment of error, Green argues that the evidence was insufficient for all eight of his convictions because it only involved the testimony of A.T., who was an "unreliable witness" with "a history of making serious accusations and then recanting" them. He asserts that A.T.'s testimony was "vague and lacking in specificity as to time, place, and circumstances" and was uncorroborated. He points out that the Commonwealth did not introduce any: (1) eyewitness testimony, (2) medical or forensic evidence, (3)

- 15 -

incriminating statements or confession made by him, or (4) evidence of an immediate or recent complaint of sexual abuse made by A.T. In particular, he points out that A.T.'s mother did not testify at the trial to confirm that A.T. waited to report the first incident of cunnilingus to her "for at least a week," even though A.T. testified that her mother was asleep in the bed with her and Green when the incident occurred. Similarly, Green emphasizes that, despite the police interviewing A.T. "more than one time," she did not inform the police of the sexual abuse and she did not report the abuse to her aunt "for at least nine months." He argues that A.T. provided no "credible explanation" for this nine-month delay and, therefore, it was an "unreasonable delay in making a hue and outcry" that rendered A.T.'s allegations against him incredible as a matter of law. He thus argues that the evidence was insufficient to sustain his eight felony convictions because it did not exclude the reasonable hypothesis of innocence that "A.T. simply made up the allegations against [him] because . . . she 'hated him.'"

In its brief, the Commonwealth contends that Green did not argue these points to the trial court when he moved to strike at the close of all the evidence. It thus argues that Green has not preserved them for appeal and Rule 5A:18 bars us from considering them. We agree. In fact, our review of the trial transcript reveals that Green did not move to strike the evidence regarding the aggravated sexual battery charges at any time during the trial.

Rule 5A:18 provides in pertinent part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The purpose of this rule is "to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals." *Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002). "Rule 5A:18 requires a litigant to articulate an objection with specificity 'so that the trial judge

. . . know[s] the particular point being made in time to do something about it.'" *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (alterations in original) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 750, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Under Rule 5A:18, a defendant's failure to object to the sufficiency of the evidence "is a waiver of that issue just as if the defendant [had] 'failed to object to any other matter at trial.'" *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 80 (2010) (quoting *White v. Commonwealth*, 3 Va. App. 231, 233 (1986)). A defendant tried by a jury must preserve any objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case (if no evidence is introduced in defense), in a motion to strike at the close of all the evidence, and/or in a motion to set aside the verdict. *Commonwealth v. Bass*, 292 Va. 19, 33 (2016). In making a motion to strike or a motion to set aside the verdict, the defendant must make a specific argument to the trial court, or the allegation of error based on that argument will not be considered on appeal. *Mounce v. Commonwealth*, 4 Va. App. 433, 435 (1987). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Banks*, 67 Va. App. at 285 (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)). The "same argument must have been raised, with specificity, at trial before it can be considered on appeal." *Smith v. Commonwealth*, 48 Va. App. 521, 530 n.1 (2006) (citation omitted).

In his brief, Green does not ask this Court to apply the "ends of justice" or "good cause" exceptions of Rule 5A:18 to any of the sufficiency of evidence arguments that he now presents for the first time on appeal and we "will not consider, *sua sponte*, a 'miscarriage of justice' argument under Rule 5A:18." *Edwards*, 41 Va. App. at 761. Accordingly, we do not reach Green's challenge to the aggravated sexual battery convictions and decline to consider the unpreserved arguments relating to the other convictions.

## C. Preserved Sufficiency of Evidence Arguments

Under his general assignment of error, Green makes two additional arguments that the evidence was insufficient to sustain his convictions for forcible sodomy and indecent liberties. First, he argues that, "[r]egarding the two counts of forcible sodomy alleging cunnilingus, there was inadequate proof of penetration of A.T.'s vulva, clitoris, vagina, or other female genitalia." Second, he argues that "[r]egarding the custodial indecent liberties charges, there was no evidence that Green exercised or maintained any custodial or supervisory relationship over A.T." We find that Green presented both arguments to the trial court in support of his renewed motion to strike at the close of all the evidence. Hence, they are subject to our review. We conclude that both charge-specific arguments are without merit.

### 1. "Penetration" Issue – Forcible Sodomy Involving Cunnilingus

"Under Code § 18.2-67.1(A)(1), '[a]n accused shall be guilty of forcible sodomy if he or she engages in cunnilingus . . . with a complaining witness' who is less than thirteen years of age." *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 47 (2019) (alteration in original). Because the statute does not define "cunnilingus," our Supreme Court has given the term its "ordinary meaning" and has defined it as the "stimulation of the vulva or clitoris with the lips or tongue." *Horton v. Commonwealth*, 255 Va. 606, 612 (1998) (quoting *Webster's Third New International Dictionary* 554 (1993)). The vulva "encompasses the 'external parts of the female sex organs considered as a whole' and includes, beginning with the outermost parts, the labia majora, labia minora, hymen, vaginal opening and vagina." *Love v. Commonwealth*, 18 Va. App. 84, 88 (1994) (quoting 4 J.E. Schmidt, *Attorneys' Dictionary of Medicine* V-106 (18th ed. 1990)). Thus, although "penetration is an essential element of the crime of sodomy," *Ryan v. Commonwealth*, 219 Va. 439, 444 (1978), the Commonwealth does not need to prove that a defendant penetrated the victim's vaginal opening or vagina with his tongue or mouth, *Horton*,

255 Va. at 613. "[P]enetration of any portion of the vulva . . . is sufficient to show penetration," *Love*, 18 Va. App. at 88, and "the penetration that must be shown need be only slight," *Ryan*, 219 Va. at 444. Furthermore, "[a]s in rape, penetration in sodomy can be proved by circumstantial evidence," *id.* at 445, and "the issue of penetration is a question for the jury upon the evidence in the case," *id.* at 444.

During her direct examination, A.T. testified that Green licked her vagina. When asked if he licked her "totally outside," A.T. stated that Green licked her "[w]here [she] would wipe" when she went to the bathroom. Even without the benefit of medical expert testimony or a gynecological exhibit, A.T. testified with enough specificity to enable a rational jury to conclude that Green used his tongue and mouth to penetrate the outermost area of her vulvar area during the first incident in Tucker's bedroom. This testimony was sufficient to support the jury's finding that the Commonwealth proved the "penetration" element of the offense of forcible sodomy by cunnilingus. *See, e.g.*, *State v. Burns*, 862 S.E.2d 431 (N.C. App. 2021) (holding that there was sufficient evidence of penetration because the young female victim testified that the defendant's fingers touched her "where I wipe at" and he rubbed his fingers on the "place where I pee"). During the trial, the jury had the opportunity to listen to A.T.'s testimony, observe her demeanor, and assess her credibility as a witness. They found her testimony describing Green's acts during the first incident in Tucker's bedroom to be credible, and we cannot say that no rational trier of fact could so find. We hold, therefore, that Green's conviction on one count of forcible sodomy by cunnilingus, in violation of Code § 18.2-67.1(A)(1), was not "plainly wrong or without evidence to support it." *Horton*, 255 Va. at 608 (quoting *Higginbotham v. Commonwealth*, 216 Va. 349, 352 (1975)).

2.  "Custodial or Supervisory Relationship" Issue – Indecent Liberties with a Child

It is a Class 6 felony for any person who is 18 years of age or older to take indecent liberties with a child over whom that person has "maintain[ed] a custodial or supervisory relationship."  Code § 18.2-370.1(A).  "The purpose of the statute 'is to protect minors from adults who might exploit certain types of relationships.'"  *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Sadler v. Commonwealth*, 276 Va. 762, 765 (2008)).  "Only those persons who maintain a custodial [or supervisory] relationship with their victim can be convicted under § 18.2-370.1."  *Seibert v. Commonwealth*, 22 Va. App. 40, 46 (1996).  As we have noted, "[t]he use of the disjunctive 'or' in the statute between the terms 'custodial' and 'supervisory' clearly indicates that proof of *either* a 'custodial' relationship or a 'supervisory' relationship, or both, will satisfy the statute's relationship requirement."  *Gilbert v. Commonwealth*, 47 Va. App. 266, 271 (2005) (emphasis added).

"The word 'custody' has been defined generally as '[t]he care and control of a thing or person.'"  *Krampen v. Commonwealth*, 29 Va. App. 163, 167 (1999) (alteration in original) (quoting *Black's Law Dictionary* 384 (6th ed. 1990)).  "Virginia [c]ourts have broadly construed the meaning of custody" in Code § 18.2-370.1.  *Guda v. Commonwealth*, 42 Va. App. 453, 458 (2004).  Thus, the statute does not require proof of legal custody.  *See Krampen*, 29 Va. App. at 168 ("the 'custodial or supervisory relationship' required under Code § 18.2-370.1 is not limited to those situations where legal custody exists").  A "custodial or supervisory relationship" can involve "informal, temporary custody."  *Guda*, 42 Va. App. at 458.  In this broader sense, the term, "custodial or supervisory relationship," includes "those individuals eighteen years or older who have a temporary custodial relationship with a child, such as, 'teachers, athletic instructors and babysitters.'"  *Krampen*, 29 Va. App. at 168 (quoting *Lovisi v. Commonwealth*, 212 Va. 848, 850 (1972)).

In this case, we must conclude that there was sufficient evidence for a rational jury to find that Green was maintaining a custodial or supervisory relationship with A.T. when he committed any of the acts of sexual abuse for which he was charged with the offense of taking indecent liberties with a child. Viewed in the light most favorable to the Commonwealth, the evidence and all of its reasonable inferences established that, between January 1, 2018 and October 31, 2018, Green sexually abused A.T. Green has thus violated Code § 18.2-370.1, which is meant to "protect minors from adults who might exploit certain types of relationships." *Sadler*, 276 Va. at 765.

Solely using recitations from the trial transcript, Green contends in his brief that the evidence was insufficient to establish that he had "any sort of actual custodial status" over A.T. as required by Code § 18.2-370.1. He argues that there was "no evidence that he was entrusted with her care [or] that he was responsible for the day-to-day caretaking of [A.T.]." Although he correctly asserts that "teachers, athletic [coaches], [and] babysitters" are "people who are given a specific caretaking role," he unsuccessfully attempts to distinguish his relationship with A.T. by characterizing himself as "merely somebody who happens to be in the same vicinity [as the abused child]." If this characterization had merit such that he was indeed merely an adult in the house at the time of the offense, Green would be correct in asserting that the evidence was insufficient to support a conviction under this statute, as "mere presence alone in the home is not enough [to establish a custodial or supervisory relationship]."[6] But Green, who lived in the house "like all the time," "physically disciplined [A.T.]," and whose instructions A.T. obeyed for fear of punishment, was not merely an adult in the house.

---

[6] *See Hutton v. Commonwealth*, 66 Va. App. 714, 726 (2016) (reviewing analogous cases and finding that "[i]n none of the cases, however, does simply being in the presence of a child trigger a supervisory obligation").

- 21 -

A "custodial relationship arises *when the supervising adult exercises care and control over the child*, with the care including the 'responsibility for and the control of the child's safety and well being.'" *Guda*, 42 Va. App. at 459 (emphasis added) (quoting *Krampen*, 29 Va. App. at 168). The statute "does not require the specific entrustment of the child to the care of the adult to create a custodial or supervisory relationship." *Id.* A person thus "may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility." *Id.* at 460 (quoting *Snow v. Commonwealth*, 33 Va. App. 766, 773 (2000)). A.T. testified that Green had physically disciplined her in the past. This exercise of physical discipline, the Commonwealth contended, "show[ed] he had a role of a caretaker." In affirming the trial court's conviction, this Court agrees.

Physical "discipline," as a "[a] method of training people to control their behavior and obey rules," is the province of a parent-child relationship. *Discipline*, *Black's Law Dictionary* (12th ed. 2024). The recognition of this relationship is the foundation of the parent-discipline privilege, where it is "[a] parent's right to use reasonable force or to impose reasonable punishment on a child in a way that is necessary to control, train, and educate." *Parent-Discipline Privilege*, *Black's Law Dictionary*, *supra*. "Virginia, like every other state, permits parents to discipline their children with corporal punishment," and when "[p]roperly viewed . . . the privilege protects diverse parenting values and practices while limiting the significant costs on the family that accompany state intervention." *Woodson v. Commonwealth*, 74 Va. App. 685, 689, 695 (2022). Corporal punishment, then, is recognized as a method of discipline reserved for parents and those in parental roles.[7] In *Campos v. Commonwealth*, 67 Va. App. 690, 717 (2017),

---

[7] In contrast, "[t]he statutory framework [of Code §§ 63.2-1511 and -1516.1] prohibits corporal punishment in the school setting but recognizes, for example, that a teacher may need to use reasonable force against a student to protect other students, or to prevent the student from self-harm." *Benedict-Miller v. Va. Dep't of Soc. Servs.*, 73 Va. App. 679, 688 (2021).

- 22 -

this Court affirmed the trial court's conviction of a defendant when the "Commonwealth's evidence established that appellant had [the] authority to instruct and discipline [the child] such that [the child] was required to obey . . . or face punishment."

Green instructed A.T. to "not tell anyone" that he was abusing her. When asked what she thought would happen if she told anyone about the abuse, she responded, "[I thought] [t]hat I would get in trouble or he'd hit us -- hit me." Green had hit A.T., her mother, and her younger brother before. In one instance, when A.T. tried to contact her aunt while Green and her mother were fighting, Green "took her cell phone and threw it down the steps." A.T.'s mother did not, in response to A.T.'s revelation about the abuse or in response to Green's disciplinary displays, do anything to protect A.T. or otherwise intervene because she "was afraid of [Green]." Where a person "may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility," the voluntary act of physically discipling a child without intervention by or explicit objection from the parent can reasonably be said to constitute taking that responsibility. *Guda*, 42 Va. App. at 460.

Green also argues that the evidence was insufficient because the Commonwealth's case "was based entirely upon the evidence of A.T.," who Green argues was "an unreliable witness," and lacked any "physical evidence corroborating A.T.'s claims." This argument fails at every turn. "[A] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). In cases involving sexual offenses, "[b]ecause [such] offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Garland v. Commonwealth*, 8 Va. App. 189, 191 (2005).

In support of his argument that A.T.'s testimony was "incredible as a matter of law," Green argues that A.T. "unreasonabl[y] delay[ed] in making a hue and outcry" when she waited "at least nine months" to reveal the abuse to her aunt, "was interviewed by police . . . yet . . . failed to say anything to them about the incidents of alleged sexual molestation," and "inexplicably failed to yell or cry out to her mother for help" during the "first time Green molested her [while] A.T.'s mother was lying in bed next to her." "Generally, failure to report an incident of sexual abuse for an unreasonably long period casts 'suspicion and doubt' on the victim's testimony, 'unless there is a credible explanation for such delay.'" *Wilson*, 46 Va. App. at 88 (quoting *Willis & Bell v. Commonwealth*, 218 Va. 560, 563 (1977)). When the victim is a minor, her age is a significant factor in assessing the credibility of the explanation or reason behind the delay. *See Wilson*, 46 Va. App. at 85 ("In light of the daughter's impressionable age, the ongoing nature of the abuse, and the family relationship between the parties, the daughter's explanation is eminently reasonable."); *see also Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991) (finding that "[t]he victim's youth, fright and embarrassment certainly provided the jury with an acceptable explanation for his behavior in these circumstances"). Like the twelve-year-old victim in *Wilson*, A.T. was a young, impressionable minor at the time of the offense and was "scared" of Green and afraid that he "would hit [her]." S*ee Wilson*, 46 Va. App. at 88 ("[T]he daughter explained that she did not immediately report [defendant's] conduct because of her fear of him and her shame and embarrassment at what was happening to her."). A.T. did report the abuse earlier to her mother, but her mother did nothing.

Green engaged in "precisely the type of exploitation[8] the General Assembly enacted [Code § 18.2-370.1] to deter" by "cho[osing] to initiate predatory contact [in a place] where he

_____

[8] In our unpublished opinion in *Saravia v. Commonwealth*, Record No. 0318-22-4, 2023 Va. App. LEXIS 68 (Jan. 31, 2023), this Court affirmed a conviction for custodial taking indecent liberties with a child. In reliance on *Saravia*, the Commonwealth argues that Green, like the

held a position of authority and where [A.T.] was a captive audience, unable to resist or avoid contact with him." *Linnon*, 287 Va. at 101 (footnote added). Green chose to initiate predatory contact. He held a position of authority over A.T., if not explicitly granted, implicit in the function of his relationship to her and to her mother, who "was scared of [Green]" and "did . . . [nothing] to protect [A.T.]."[9] A.T. was a captive audience. She was a ten-year-old child who "was scared," instructed to "not tell," and had been physically disciplined by the person instructing her not to tell.

We hold, therefore, that the trial court did not err in denying Green's renewed motion to strike the evidence relating to his three charges of taking indecent liberties with a child while in a custodial or supervisory relationship. Accordingly, we affirm the trial court's decision.

## II. Denial of Motion *in Limine*

In his second assignment of error, Green alleges that the trial court erred in denying his motion *in limine* barring the Commonwealth from admitting a certified copy of the court order relating to his 2003 conviction for aggravated sexual battery in the guilt/innocence phase of the jury trial. While acknowledging this Court's unpublished opinion in *English*, 2022 Va. App. LEXIS

---

defendant in *Saravia*, was a "potential new father figure" whose "responsibility for [A.T.'s] safety and well-being constituted the type of supervisory relationship required by Code § 18.2-370.1." Commonwealth Br. at 19 (quoting *Saravia*, slip op. at 5, 2023 Va. App. LEXIS 68, at *8). "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012); Rule 5A:1(f). Even absent evidence that A.T. viewed Green as her "de facto parental figure" or a "potential new father," our affirmation of the trial court's decision in *Saravia* compels our reasoning in this case. The mere fact that A.T. testified that she "hated" Green and "hated" living in her house with him because he drank, argued with and physically abused Tucker, and physically disciplined her and her sibling does not change the fact that Green did in fact discipline her. As discussed in this opinion, his near-constant presence in the house, his discipline of A.T., and the overall family dynamics support the finding that he acted in a supervisory role. This Court is not convinced that a child must think fondly of those in positions of parental or custodial power before the exploitation of that dynamic is given due weight.

[9] The actual testimony is derived from A.T.'s answer to the question "did [your mother] do anything to protect you?," to which A.T. responded, "No."

546, is adverse to his position, Green argues in his brief that the holding in *English* is "inconsistent with and in conflict with the overriding princip[le]" established in *Woodfin v. Commonwealth*, 236 Va. 89 (1988), and *Weimer v. Commonwealth*, 5 Va. App. 47 (1987), i.e., "evidence of other offenses is generally inadmissible to prove the offense charged." We cannot consider this supporting argument or the assignment of error itself, however, because Rule 5A:18 bars us from doing so.

Rule 5A:18 states, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Not just any objection will do. It must be both *specific* and *timely*[.]" *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). Moreover, to preserve the alleged error on appeal, the argument made to this Court must be the same argument made to the trial court. *See Edwards*, 41 Va. App. at 760; *see also Floyd v. Commonwealth*, 219 Va. 575, 584 (1978) (holding that appellate courts will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue).

In this case, Rule 5A:18 bars our review of Green's second assignment of error for two reasons. First, in his motion *in limine*, Green, by counsel, conceded that the unpublished opinion in *English* was adverse to his position, but he asserted that "the logic used by the Court of Appeals to permit such evidence during the guilt phase was and is flawed." Then, at the hearing on the motion, counsel admitted to the trial court that, after doing "further research," he had concluded that "the Supreme Court's decision in *Washington v. Commonwealth* [was] unassailable." Green did not present a legal argument explaining why he had asserted that the logic in *English* was "flawed." Under Rule 5A:18, counsel's concession and admission, individually and collectively, constituted a waiver of whether evidence of his prior aggravated sexual battery conviction was admissible in the

- 26 -

guilt/innocence phase of the jury trial.[10]  Similarly, counsel's failure to present a fully-developed legal argument constituted a waiver of the issue as well under Rule 5A:20.  *See Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) ("failure to provide legal argument and authority as required by Rule 5A:20(e) leaves [this Court] without a legal prism through which to view [the] alleged error").

Second, even if Green had not waived the issue in the trial court, he now has waived the issue by making a new argument on appeal.  As the hearing transcript indicates, at no time did defense counsel cite *Weime*r or *Woodfin* or argue that their "principle" is the controlling precedent to be applied by the trial court.  *See, e.g.*, *Clark v. Commonwealth*, 30 Va. App. 406, 411 (1999) (declining to address appellant's argument that the Commonwealth had failed to prove that he had accomplished unlawful sexual penetration by force, threat, or intimidation where he had not raised this issue with specificity at trial and the objections that he made during the trial related to the Commonwealth's failure to prove the absence of a marital relationship between the appellant and the victim and that the evidence failed to support the wording of the indictment).  With respect to both forms of waiver under Rule 5A:18, Green has not asked this Court to invoke the Rule's good cause exception or ends of justice exception and we will not do so *sua sponte*.  *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

Finally, we note that, even if the trial court had erred by refusing to bar the Commonwealth from admitting evidence of his prior aggravated sexual battery conviction during the guilt/innocence phase of the trial, the trial court did grant that alternate portion of his motion asking that limiting instructions be given to the jury.  The trial court complied by giving three limiting instructions.

---

[10] Although a party may concede the facts but not the law, a party's concession of law may qualify as a waiver without regard to whether the concession is legally correct.  *See Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc).  Under these circumstances, the appellate court may accept the concession not as a binding legal determination but, instead, "as a basis for not deciding [the issue]."  *Id.*

These limiting instructions barred the jury from considering this evidence for any purpose other than sentencing. "We assume that the jury abided by the court's instruction[s]." *Johnson v. Commonwealth*, 2 Va. App. 598, 602 (1986).

### III. Denial of Motion to Strike Juror for Cause

In his third assignment of error, Green alleges that the trial court erred in refusing to strike for cause Juror No. 34 who admitted that hearing the charges about sex offenses against a child "was a little much" and she was uncertain that she could be fair. Considering the entire voir dire, including the individual examination of Juror No. 34, we disagree.

"The striking of any individual potential juror for cause . . . is committed to the sound discretion of the trial court." *Townsend v. Commonwealth*, 270 Va. 325, 329 (2005). "As an appellate court, we must defer to a trial court's ruling on the issue of whether to retain or excuse a prospective juror for cause and that ruling will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion." *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)). "This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Id.* (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

"It is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case." *Salina v. Commonwealth*, 217 Va. 92, 93 (1976). Therefore, "[t]he court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein." Code § 8.01-358; *see* Rule 3A:14. If after questioning it appears to the trial court "that the juror does not stand indifferent in the cause,

- 28 -

another shall be drawn or called and placed in his stead for the trial of that case." Code § 8.01-358. If a prospective juror "does not stand indifferent to the cause, he is not competent. If he has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law." *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 60-61 (2011) (quoting *Spangler v. Ashwell*, 116 Va. 992, 996-97 (1914)).

"It is not uncommon to discover during *voir dire* that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000). "The opinion entertained by a juror, which disqualifies him, is an opinion of that *fixed character* which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Justus v. Commonwealth*, 220 Va. 971, 976 (1980) (emphasis added) (quoting *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)). Thus, "the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *Cressell*, 32 Va. App. at 761.

Because the trial court is "able to see and hear each member of the venire respond to questions posed" during voir dire, it "is in a superior position to determine whether a prospective juror's responses during voir dire indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Townsend*, 270 Va. at 329. "[T]he trial court must weigh the meaning of the answers given in light of the phrasing of the questions posed, the inflections, tone, and tenor of the dialogue, and the general demeanor of the prospective juror." *Taylor v. Commonwealth*, 67 Va. App. 448, 455 (2017) (alteration in original) (quoting *Smith v. Commonwealth*, 219 Va. 455, 464-65 (1978)).

Juror impartiality is a question of fact and a trial court's decision to seat a juror is entitled to great deference on appeal. *See McGill v. Commonwealth*, 10 Va. App. 237, 241 (1990). Accordingly, the decision to retain or exclude a prospective juror "will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion." *Barrett*, 262 Va. at 826. In determining whether the trial court should have excluded a prospective juror, this Court must consider the "entire voir dire, not just isolated portions." *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006).

To support his assignment of error, Green asserts that Juror No. 34 "never unequivocally indicated that she would be able to view the evidence fairly and impartially." Our review of the entire voir dire leads us to a different conclusion. The transcript of the entire voir dire examination of Juror No. 34 does not reveal a venireperson who held a bias or firm opinion of such a "fixed character [that it repelled] the presumption of innocence . . . and in whose mind the accused [stood] condemned already." *Justus*, 220 Va. at 976. Thus, we cannot conclude that the trial court abused its discretion in refusing to strike Juror No. 34 for cause.

The record shows that Juror No. 34, like all members of the venire, answered the trial judge's initial questions to confirm that: (1) she understood that Green was presumed by law to be innocent of the charges against him, (2) she understood that the law required the Commonwealth to prove Green's guilt beyond a reasonable doubt, and (3) she did not know of any reason why she could not give a fair and impartial trial to the Commonwealth or to Green solely based on the law. Then later, in response to a question from defense counsel, she told the court that she "just [did]n't want to serve [on the jury] at all" because "[she] had gone back and forth with the impartialness of everything." She explained that she was pregnant and was "not usually a very emotional person," but, upon hearing the charges, she was uncertain that she could be fair. When asked if she could comply with the court's order to "put down any emotions" that she

might have about the case, Juror No. 34 stated that "it would be difficult," but she "would hope that . . . she could." Similarly, when asked if she would be able to apply the instructions of law to the facts and evidence that she would hear throughout the trial, she replied, "I would like to say yes." She later explained that she could not know for sure because she had never been pregnant while on a jury in a case involving "these type[s] of charges." She did say, however, that she "[p]robably" could be fair and impartial if she were given time to calm herself in the jury room, "think things through," and have a discussion with all members of the jury. And when the court asked Juror No. 34 if she "could . . . critically examine the witnesses on the stand and apply that to any other evidence that comes in and make a determination based on the law that [the court provides] at the end," she replied affirmatively.

In denying Green's motion to strike Juror No. 34 for cause, the trial court stated that it found that her answers to the questions of court and counsel indicated that she would be fair and impartial. The court did observe that she was "a bit emotional," but expressed that "she will hear this case and be fair." Thus, the question before this Court is whether the trial court abused its discretion in accepting Juror No. 34's unqualified affirmative answer to its last question and in finding that, despite being "a bit emotional," she could be a fair and impartial juror. We conclude that the trial court did not abuse its discretion.

Taken in its entirety, the voir dire, including the private examination of Juror No. 34, reveals a venireperson who demonstrated no fixed bias or firm opinion preventing her from embracing the law's presumption of innocence and being fair and impartial. Instead, it reveals a venireperson who admitted that she was more emotional than usual due to her pregnancy and, for this reason, she had some anxiety and uncertainty about serving as a juror in a case involving sex offenses committed against a child. Such a candid answer did not constitute grounds for disqualification. *See Garland v. State*, 435 S.E.2d 431 (Ga. 1993) (holding trial court did not

abuse its discretion in refusing to strike for cause a prospective juror who was troubled by the emotional aspects of deciding a case involving sexual offenses against a child because she was pregnant and had recently learned that the children of a friend had been sexually molested by a relative, but who stated that she would try to put her emotions aside and decide the case based on the evidence). Nothing about being emotional and uncertain about how she would deal with her emotions in serving as a juror in a child sexual abuse case meant that Juror No. 34 could not "stand indifferent to the cause." *Castillo v. Commonwealth*, 70 Va. App. 394, 422 (2019).

More importantly, the trial court's direct examination of Juror No. 34 revealed a person who said, without qualification, "Yes," when asked if she could critically examine the witnesses on the stand and apply their testimony to any other evidence in the case and make a determination based on the law. In finding that Juror No. 34, despite being "a bit emotional," could be a fair and impartial juror, the trial court obviously accepted her unqualified affirmative answer to this question and gave it great weight. And we cannot say that it was plainly wrong in doing so as the trial court had "the opportunity . . . to observe and evaluate" Juror No. 34's "sincerity, conscientiousness, intelligence, and demeanor . . . first hand" in answering this question and all other questions before it. *Pope v. Commonwealth*, 234 Va. 114, 123-24 (1987). We must conclude, therefore, that Juror No. 34 answered the trial court's last question with sufficient conviction to remove any doubt about her ability and willingness to serve as an impartial juror. Given the principles of appellate review, we cannot disturb this finding.

CONCLUSION

For the foregoing reasons, we affirm Green's three convictions for aggravated sexual battery, his three convictions for taking indecent liberties with a child while in a custodial or supervisory relationship, and his two convictions for forcible sodomy, but we remand this case to the trial court to correct clerical errors in the conviction and sentencing orders to reflect that the

jury found Green guilty of one count of forcible sodomy by cunnilingus (either Case Number CR21000089-01 or Case Number CR21000089-02) and one count of forcible sodomy by fellatio (Case Number CR21000089-03).

*Affirmed and remanded.*

Petty, J., concurring.

While I concur in the disposition, I do not join in the opinion.